+UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER and HOUSING WORKS, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and BEN CARSON, Secretary of the Department of Housing and Urban Development, | ) ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No. 3:20-cv-11765-MGM

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION UNDER 5 U.S.C. § 705 TO POSTPONE THE EFFECTIVE DATE OF HUD'S UNLAWFUL NEW RULE**

Lauren Sampson (BBO # 704319)
lsampson@lawyersforcivilrights.org
Oren Sellstrom (BBO # 569045)
osellstrom@lawyersforcivilrights.org
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, 5th Floor
Boston, Massachusetts 02210
(617) 482-1145

Scott P. Lewis (BBO # 298740)
slewis@andersonkreiger.com
Mina S. Makarious (BBO # 675779)
mina@andersonkreiger.com
Annie E. Lee (BBO # 705568)
alee@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, Massachusetts 02109
(617) 621-6525

## Table of Contents

Table of Authorities ................................................................................................................ ii

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 3

I.  THIS COURT HAS DISCRETION TO STAY THE EFFECTIVE DATE OF
THE 2013 RULE AND BAR ITS IMPLEMENTATION UNTIL THE COURT
COMPLETES THIS REVIEW PROCEEDING. ................................................................ 3

II.  PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS. ................................. 5

    A.  HUD's 2020 Rule Is Contrary To Law. ................................................................. 5

    B.  The 2020 Rule Is Arbitrary and Capricious. ......................................................... 11

    C.  HUD Improperly Created the 2020 Rule's "Outcome Prediction"
Defense without Notice and Comment. ................................................................. 13

III.  PLAINTIFFS AND THE VICTIMS OF DISCRIMINATION THEY SERVE
WILL SUFFER IRREPARABLE HARM IF THE NEW RULE TAKES
EFFECT. ....................................................................................................................... 15

IV.  THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR DELAYING
THE EFFECTIVE DATE OF HUD'S NEW RULE. ...................................................... 18

Conclusion ........................................................................................................................... 19

Addenda

    24 C.F.R. §§ 100.5 and 100.500 under 2020 Rule

    24 C.F.R. §§ 100.5 and 100.500 under 2013 Rule

## Table of Authorities

**Cases**                                                                                               **Page(s)**

*American Wild Horse Pres. Campaign v. Perdue,*
    873 F.3d 914 (D.C. Cir. 2017) ........................................................................................11

*Avenue 6E Invs., LLC* v. *City of Yuma, Ariz.,*
    818 F.3d 493 (9th Cir. 2016) .........................................................................................17

*BASF Wyandotte Corp. v. Costle,*
    598 F.2d 637 (1st Cir. 1979) ..........................................................................................13

*Brady Campaign to Prevent Gun Violence v. Salazar,*
    612 F. Supp. 2d 1 (D.D.C. 2009) .................................................................................13

*City & County. of San Francisco v. U.S. Citizenship & Immigration Servs.,*
    408 F. Supp. 3d 1057 (N.D. Cal. 2019) ...........................................................................3

*Council for Urological Interests v. Burwell,*
    790 F.3d 212 (D.C. Cir. 2015) .......................................................................................11

*District of Columbia v. United States Dep't of Agric.,*
    444 F. Supp. 3d 1 (D.D.C. 2020), *appeal filed,* No. 20-5136
    (D.C. Cir. May 14, 2020) ...............................................................................................4

*East Bay Sanctuary Covenant* v. *Barr,*
    964 F.3d 832 (9th Cir. 2020) .........................................................................................17

*Gamble v. City of Escondido,*
    104 F.3d 300 (9th Cir. 1997) ...........................................................................................6

*Gladstone Realtors v. Village of Bellwood,*
    441 U.S. 91 (1979)............................................................................................................5

*Michigan v. E.P.A.,*
    576 U.S. 743 (2015) ......................................................................................................11

*Natural Res. Def. Council, Inc. v. E.P.A.,*
    824 F.2d 1258 (1st Cir. 1987)..................................................................................13, 14

*Nken v. Holder,*
    556 U.S. 418 (2009)....................................................................................................4, 18

*Rhode Island Comm'n for Human Rights v. Graul,*
    120 F. Supp. 3d 110 (D.R.I. 2015) ..................................................................................6

*Robbins v. Reagan,*
    780 F.2d 37 (D.C. Cir. 1985)...........................................................................................5

*Sierra Club v. Jackson*,
  833 F. Supp. 2d 11 (D.D.C. 2012) ......................................................................4

*Support Ministries for Persons with AIDS, Inc. v. Vill. of Waterford*,
  808 F. Supp. 120 (N.D.N.Y. 1992) ....................................................................6

*Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Communities Project, Inc.*,
  576 U.S. 519 (2015) ............................................................................... *passim*

*Town of Huntington v. Huntington Branch, N.A.A.C.P*,
  488 U.S. 15 (1988) .............................................................................................6

*Trafficante v. Metro. Life Ins. Co.*,
  409 U.S. 205 (1972) ...........................................................................................6

*Union of Concerned Scientists v. Wheeler*,
  954 F.3d 11 (1st Cir. 2020) ................................................................................5

*University of Texas v. Camenisch*,
  451 U.S. 390 (1981) ...........................................................................................4

*Washington* v. *United States Dep't of Homeland Sec.*,
  408 F. Supp. 3d 1191 (E.D. Wash. 2019) ....................................................4, 18

*Winter* v. *Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...............................................................................................4

**Statutes**

Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ......................................................... *passim*

5 U.S.C. § 553 ....................................................................................................13

5 U.S.C. § 702 ......................................................................................................3

5 U.S.C. § 705 ............................................................................................. *passim*

5 U.S.C. § 706 .................................................................................................5, 11

42 U.S.C. §§ 2000e *et seq.* ....................................................................................6

42 U.S.C. § 3608 .............................................................................................6, 10

42 U.S.C. § 3610 ...................................................................................................6

42 U.S.C. § 3614 .............................................................................................6, 13

42 U.S.C.  § 5304 ................................................................................................10

**Regulations**

24 C.F.R. § 5.152 ................................................................................................................10

24 C.F.R. § 100.500 .................................................................................................... *passim*

**Administrative and Regulatory Materials**

Department of Housing and Urban Development, *HUD's Implementation of the Fair Housing Act's Disparate Impact Standard*, 84 Fed. Reg. 42854 (Aug. 19, 2019) ................................................................................................................8, 14

Department of Housing and Urban Development, *Preserving Community and Neighborhood Choice*, 85 Fed. Reg. 47899 (Aug. 7, 2020) ............................................10

Department of Housing and Urban Development, *Implementation of the Fair Housing Act's Disparate Impact Standard*, 85 Fed. Reg. 60288 (Sept. 24, 2020). .................................................................................................... *passim*

Department of Housing and Urban Development, *Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11460 (Feb. 15, 2013) .................................................................................................... *passim*

**Introduction**

Plaintiffs Massachusetts Fair Housing Center ("MFHC") and Housing Works, Inc.

("Housing Works") ask this Court for simple, yet essential, preliminary relief: for the Court to

use its authority under the Administrative Procedure Act ("APA"), 5 U.S.C. § 705, to postpone

the effective date of a new, unlawful rule issued by the Department of Housing and Urban

Development ("HUD"), *HUD's Implementation of the Fair Housing Act's Disparate Impact*

*Standard*, 85 Fed. Reg. 60288 (Sept. 24, 2020) (the "2020 Rule"), and issue a nationwide

preliminary injunction barring HUD from implementing the 2020 Rule pending the Court's

review.[1]

If the 2020 Rule is permitted to take effect on October 26, 2020 – as it will, absent

judicial intervention – it will cast aside decades of well-established practice and procedure, both

at HUD and in the courts, enforcing the mandate of the Fair Housing Act, 42 U.S.C. §§ 3601 *et*

*seq*. (the "FHA"), through disparate impact litigation.  Unlike "disparate treatment" claims,

which target policies and practices with a discriminatory intent, "disparate impact" claims

challenge policies and practices that have disproportionate adverse effects on protected classes,

regardless of intent.  *See Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Communities*

*Project, Inc.*, 576 U.S. 519, 524 (2015) ("*Inclusive Communities*").  As the Supreme Court has

recognized, disparate-impact liability "permits plaintiffs to counteract unconscious prejudices

and disguised animus that escape easy classification as disparate treatment.  In this way

disparate-impact liability may prevent segregated housing patterns that might otherwise result

from covert and illicit stereotyping."  *Id*. at 540.

---

[1]     Plaintiffs anticipate that in the ordinary course, this case will come before the Court for a decision on the merits on cross-motions for summary judgment.  While it may take HUD some time to assemble the administrative record, Plaintiffs are prepared to follow a prompt schedule for briefing and argument on the merits.

The 2020 Rule marks an abrupt and unjustified departure from the historical approach to disparate impact enforcement under the FHA, by introducing novel pleading and proof requirements that will be virtually impossible to meet, and creating broad new defenses to liability, including a perplexing "outcome prediction" defense HUD featured for the first time in its final rule, contrary to the language and intent of the FHA.  Unless it is set aside, the 2020 Rule will replace a rule HUD issued just seven years ago that properly codified the applicable standards under the FHA as they have been interpreted by HUD and the courts for decades.  *See Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11460 (Feb. 15, 2013) (the "2013 Rule").[2]  The 2013 Rule has proved workable for victims of housing and lending discrimination, and it adequately protects defendants from unjustified disparate impacts claims.  The Court should allow HUD's 2013 Rule to remain in effect while it considers Plaintiffs' serious challenges to HUD's 2020 Rule.

If the 2020 Rule is allowed to take effect, Plaintiffs will be forced to abandon long-standing, well-established tools they have successfully relied upon to combat subtle and unspoken housing and mortgage lending practices that, while not openly discriminatory, have unlawful discriminatory effects on protected classes under the FHA, including people of color, women and immigrants.  Plaintiffs and the victims of housing and lending discrimination they serve will suddenly be forced to bring and prove disparate impact claims under heightened pleading and proof standards unlike any the FHA, HUD or the courts have ever previously required.  In many cases, victims of housing discrimination may be discouraged by the obstacles HUD has erected to deter victims from vindicating their rights under the FHA and decide not to

---

[2]     The operative provisions of both the 2020 Rule and the 2013 Rule it would replace were attached as Exhibits A and B to the Complaint.  For the Court's convenience, they are reproduced in the addenda to this brief.

even challenge illegal discrimination.  In other cases, victims may file administrative complaints

with HUD, or civil claims in court, only to have their cases dismissed under new standards of

pleading and proof that are flatly inconsistent with the FHA.

If the 2020 Rule takes effect and this Court later sets the 2020 Rule aside, as Plaintiffs

believe it should, victims of housing and lending discrimination – hurt by a range of policies and

practices, from zoning that disproportionately excludes people of color and perpetuates

segregation, to tenancy restrictions that disproportionately harm female victims of domestic

violence – will have been deterred from challenging unlawful practices, and could be foreclosed

from bringing their claims forever.

## Argument

## I.     THIS COURT HAS DISCRETION TO STAY THE EFFECTIVE DATE OF THE 2013 RULE AND BAR ITS IMPLEMENTATION UNTIL THE COURT COMPLETES THIS REVIEW PROCEEDING.

HUD's 2020 Rule is final agency action reviewable by this Court under the APA,

5 U.S.C. § 702.  A court reviewing final agency action, such as the 2020 Rule, "may, on such

conditions as may be required and to the extent necessary to prevent irreparable injury, … issue

all necessary and appropriate process to postpone the effective date of an agency action ...

pending conclusion of the review proceeding."  5 U.S.C. § 705.  Plaintiffs ask the Court to

exercise its discretion to stay the October 26, 2020 effective date of the 2020 Rule and issue a

preliminary injunction barring HUD from applying its 2020 Rule until the Court has decided

whether or not HUD's 2020 Rule is valid.

In determining whether to issue a stay under § 705, the Court should apply the same

standards that apply to grants of preliminary injunctions.  *See City & County. of San Francisco v.

U.S. Citizenship & Immigration Servs.*, 408 F. Supp. 3d 1057, 1078 (N.D. Cal. 2019).  A stay

under § 705 and a preliminary injunction both serve to preserve the status quo pending a decision

on the merits.  *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 28 (D.D.C. 2012).  In a case like this, the applicable factors are whether (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff will suffer irreparable harm in the absence of a stay; and (3) the balance of harms and the public interest favor a stay. *Nken* v. *Holder*, 556 U.S. 418, 435 (2009); *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).

Courts frequently enter stays of effective dates and nationwide preliminary injunctions in cases like this one where serious challenges are lodged against new regulations before they are put into effect; irreparable harm will arise if no preliminary relief is granted; and the balance of harms and public interest favor maintaining the status quo while the Court considers the case on the merits.  *See, e.g., District of Columbia v. United States Dep't of Agric*., 444 F. Supp. 3d 1, 46 (D.D.C. 2020) (granting partial stay of rule under § 705 and nationwide preliminary injunction regarding eligibility for low-income food assistance), *appeal filed,* No. 20-5136 (D.C. Cir. May 14, 2020); *Washington v. United States Dep't of Homeland Sec*., 408 F. Supp. 3d 1191, 1223 (E.D. Wash. 2019) (same regarding DHS rules changing visa application rules).

In this case, all applicable factors favor a stay and injunction.  First:  Plaintiffs are likely to succeed on the merits because HUD's 2020 Rule vitiates core protections afforded by the FHA and is contrary to law; HUD has arbitrarily and capriciously upended its 2013 Rule; and HUD did not comply with its notice and comment obligations.  Second:  if the 2020 Rule is allowed to take effect, it will cause irreparable injury to Plaintiffs, the communities and victims they represent, and similar advocacy organizations throughout the country.  Third: there is no urgent reason to let the 2020 Rule take effect before the Court has had an opportunity to review whether it is lawful; but if the 2020 Rule is allowed to take effect and then is later set aside, in

4

contrast, there would be immense confusion in the filing and adjudication of pending disparate impact claims and a needless waste of private and public resources.  The Court should therefore stay the effective date of HUD's 2020 Rule, and bar its application by HUD, until this review proceeding has been concluded.

## II.      PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS.

Plaintiffs have challenged HUD's 2020 Rule on a variety of different grounds under the APA.  They have a strong likelihood of success on all of their claims.  The 2020 Rule must ultimately be set aside, however, if Plaintiffs succeed on any one of their challenges to the Rule.[3]

### A.      HUD's 2020 Rule Is Contrary To Law.

The 2020 Rule must be set aside because it creates an extraordinary array of new pleading rules, defenses and burden-shifting provisions that are inconsistent with the language and remedial purposes of the FHA, and thus is "not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A).  *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 21-122 (1st Cir. 2020) (agency action undermining governing statute or otherwise inconsistent with motivating congressional intent is not in accordance with law) (*citing Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985)).

Enacted a week after  Dr. Martin Luther King's assassination and in response to his advocacy for housing integration, the purpose of the FHA is to eradicate entrenched segregation in housing and related services, such as mortgage lending.  The FHA is a broad remedial statute, enforceable at HUD and in the courts, that aims to stamp out housing discrimination in all of its forms.  *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 102-104 (1979) (noting FHA is intended to cover a broad class of plaintiffs and provide unimpeded access to federal

---

[3]       For purposes of this motion only, Plaintiffs rely upon just three of the claims they have asserted.

courts); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972) ("The language of the [FHA] is broad and inclusive.").  For decades, HUD and the courts have understood and enforced the FHA in light of its historical roots.  Liability has been found not only for intentional discrimination, but also for policies that have discriminatory effect or "disparate impact."  *See, e.g., Town of Huntington v. Huntington Branch, N.A.A.C.P*, 488 U.S. 15, 16–18 (1988) (*per curiam*) (zoning law preventing construction of multifamily rental units was unlawful because of disparate impact on minority groups); *Rhode Island Comm'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 131 (D.R.I. 2015) (landlord's practice of limiting the number of occupants in a residential unit had a disparate impact based on familial status); *Support Ministries for Persons with AIDS, Inc. v. Vill. of Waterford*, 808 F. Supp. 120, 136 (N.D.N.Y. 1992) (finding local zoning ban on residences for "persons suffering from . . . any illness or disease" unlawful because of disparate impact on handicapped individuals).

When Congress enacted the Fair Housing Act in 1968, it directed HUD affirmatively to further fair housing, 42 U.S.C. § 3608(d); gave HUD the ability to investigate and adjudicate fair housing claims, 42 U.S.C. § 3610; and authorized the Secretary of HUD to issue regulations to carry out the FHA.  42 U.S.C. §§ 3608(c); 3614a.  HUD properly exercised this power when it issued its 2013 Rule, capturing four decades of accumulated experience in the adjudication of disparate impact claims, both at HUD and in the courts.  The 2013 Rule defined an unlawful "discriminatory effect"; set forth what could be recognized as a "legally sufficient justification"; and codified the familiar three-part burden shifting framework used by courts under the FHA, as well as under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, the FHA's sister statute in employment.  *See, e.g., Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) ("We apply Title VII discrimination analysis in examining Fair Housing Act ('FHA')

discrimination claims.  Most courts applying the FHA, as amended by the Fair Housing Act Amendments, have analogized it to Title VII.") (quotation omitted).  The 2013 Rule did not alter existing law or change well-accepted procedures applicable to disparate impact claims.

In 2015, the Supreme Court was asked to declare that the FHA only bars intentional discrimination and to rule that disparate impact claims can never be asserted under the FHA.  *See Inclusive Communities*, 576 U.S. at 528.  The Court declined to do so and. instead, unequivocally affirmed that the FHA prohibits both intentional discrimination and acts with unjustified disparate impacts that create "separate and unequal" conditions, underscoring that "[r]ecognition of disparate-impact claims is consistent with the FHA's central purpose." *Id*. at 539.  The Court explained that zoning laws and other housing restrictions, in particular, function to "exclude minorities from certain neighborhoods without any sufficient justification," and that disparate impact suits "targeting such practices reside at the heartland of disparate impact liability." *Id*. Contrary to HUD's later assertions, *Inclusive Communities* did not encourage, let alone mandate, any changes to the 2013 Rule.  In fact, as late as 2017, HUD defended the 2013 Rule in court, arguing that *Inclusive Communities* is "entirely consistent with the [2013] Rule's reaffirmation of HUD's longstanding interpretation that the FHA authorizes disparate impact claims" and that the Supreme Court had "affirmed the validity of the [2013] Rule's approach."  Defs.' Opp'n to Pl.'s Mot. For Leave to Am. Compl., *Property Cas. Insurers Ass'n of Am. v. Carson*, No. 13-cv-8564 at 9-10 (N.D. Ill. Apr. 21, 2017) (ECF # 122).

Nonetheless, on August 19, 2019, HUD published a Proposed Rule to replace its 2013 Rule with new pleading requirements, defenses and burdens of proof that would effectively accomplish what the Supreme Court decided not to do:  eliminate (or drastically curtail) the ability of victims of housing and lending discrimination to bring successful disparate impact

claims, by changing HUD's own rules. *HUD's Implementation of the Fair Housing Act's Disparate Impact Standard*, 84 Fed. Reg. 42854 (the "Proposed Rule"). HUD asserted, without any justification, that its about-face was required by the Supreme Court's decision in *Inclusive Communities.* 84 Fed. Reg. at 42857. On September 24, 2020, HUD published the final 2020 Rule. 85 Fed. Reg. 60288. The 2020 Rule is directly at odds with *Inclusive Communities* and breathtaking in its disrespect for the anti-discrimination purposes of the FHA.

Signaling its intent, the 2020 Rule strikes the perpetuation of "segregated housing patterns" from the definition of "discriminatory effect," as it appears in the 2013 Rule, even though the eradication of segregated housing was the central reason why the FHA was passed in 1968. 2020 Rule, 24 C.F.R. § 100.500(a). The 2020 Rule then completely overhauls the pleading requirements for a disparate impact claim. Under the 2020 Rule, a plaintiff is not only required to plead that "a specific, identifiable policy or practice has a discriminatory effect," as required by the 2013 Rule; but must also "sufficiently plead facts" to support each of five new elements:

> (1) That the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;

> (2) That the challenged policy or practice has a disproportionately adverse effect on members of a protected class;

> (3) That there is a robust causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the direct cause of the discriminatory effect;

> (4) That the alleged disparity caused by the policy or practice is significant; and

> (5) That there is a direct relation between the injury asserted and the injurious conduct alleged.

2020 Rule, 24 C.F.R. § 100.500(b).

The 2020 Rule then permits a defendant, again at what HUD calls the "pleading stage," to "establish" that the plaintiff failed to make out a case by "showing" that a plaintiff has failed to sufficiently plead facts to establish any of the required elements of a prima facie case.  2020 Rule, 24 C.F.R. § 100.500(d)(1).  These confusing rules require a plaintiff, without the benefit of discovery, to anticipate in their complaint every practical, profit-oriented, policy consideration or requirement of law a defendant might invoke in defense of its discriminatory policy or practice.

While the 2020 Rule piles on new, onerous pleading and proof requirements plaintiffs must meet to bring and sustain their case, it eases the burdens of proof on defendants, and arms them with a slew of new defenses to escape liability.  The 2020 Rule gives a defendant the opportunity to rebut a victim's allegation that the challenged policy or practice is "arbitrary, artificial and unnecessary" simply by producing evidence showing that the challenged policy or practice "advances a valid interest," 2020 Rule, 24 C.F.R. § 100.500(c)(2), rather than by showing that the competing interest is "substantial, legitimate, [and] non-discriminatory," as required by the 2013 Rule.  24 C.F.R. § 100.500(c)(2).  Even if a plaintiff survives a motion to dismiss at the pleading stage, the 2020 Rule provides that a defendant may still escape liability by demonstrating that the discriminatory policy or practice "is intended to predict an occurrence of an outcome, the prediction represents a valid interest, and the outcome predicted by the policy or practices does not or would not have a disparate impact on protected classes compared to similarly situated individuals not part of the protected class."  2020 Rule, 24 C.F.R. § 100.500(c)(2)(i).

Under the 2013 Rule, a plaintiff could still succeed on a disparate impact claim, even if the defendant offered a nondiscriminatory justification, by "proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by

another practice that has a less discriminatory effect." 2013 Rule, 24 C.F.R. § 100.500(c)(3).  In

contrast, the 2020 Rule also raises this burden of proof, requiring a plaintiff to prove not only

that a practice with less discriminatory effects exists, but also that the alternative practice serves

the defendants' identified interest "in an equally effective manner without imposing materially

greater costs on, or creating other material burdens for, the defendant."  2020 Rule,

§ 100.500(c)(3).  In essence, the 2020 Rule introduces, for the first time in the history of the

FHA or any comparable civil rights statute, a "profit" excuse that permits the perpetuation of

otherwise prohibited discriminatory effects even if an alternative, nondiscriminatory practice

would achieve the same "identified interest" – solely because it might increase the defendant's

costs of doing business.

By raising pleading and proof burdens for plaintiffs while lowering proof burdens for

defendants and equipping them with new defenses, HUD has violated its statutory obligation to

affirmatively further fair housing by redressing longstanding patterns and practices of

segregation and discrimination.  42 U.S.C. §§ 3608(d) and (e)(5); 24 C.F.R. § 5.152 (defining

"affirmatively further fair housing" as "taking meaningful actions, in addition to combating

discrimination, that . . . foster inclusive communities free from barriers that restrict access to

opportunity based on protected characteristics," rescinded in its entirety by HUD in separate

rulemaking effective September  8, 2020, *Preserving Community and Neighborhood Choice*,

85 Fed. Reg. 47899, 47900 (August 7, 2020)).  By making it far more difficult even for its own

grantees (such as Plaintiff Massachusetts Fair Housing Center) to bring disparate impact

discrimination claims and raising barriers to the exercise of housing choice by protected classes,

HUD has abdicated its statutory duty to affirmatively further fair housing.  *See also* 42 U.S.C.

§ 5304(b)(2) (grants shall be made only if the grantee certifies that it will "affirmatively further

10

fair housing.").  When an agency wanders so far from the purpose and language of the statute it is implementing, the Court should set the agency's rule aside pursuant to 5 U.S.C. § 706(2)(A).  *See Michigan v. E.P.A.*, 576 U.S. 743, 754 (2015) (an agency may not interpret a statute in a manner that disregards its statutory context); *Council for Urological Interests v. Burwell*, 790 F.3d 212, 222 (D.C. Cir. 2015) (an agency's interpretation of a statute must be a "'permissible' and 'reasonable' view of the Congress's intent.").

### B.       The 2020 Rule Is Arbitrary and Capricious.

The 2020 Rule should be set aside as "arbitrary and capricious" within the meaning of 5 U.S.C. § 706(2)(A), because HUD did not offer a reasoned explanation for gutting its 2013 Rule and substituting its new 2020 Rule, an about-face in HUD's interpretation of the FHA.  *American Wild Horse Preservation Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) ("[W]hen an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it.").  HUD attempts to justify its reversal in two ways:  first, HUD asserts the 2020 Rule is necessary to bring the 2013 Rule into alignment with the Supreme Court's decision in *Inclusive Communities*; second, HUD claims the 2020 Rule will provide clarity to members of the public seeking to comply with the FHA or to bring a claim for disparate impact that meets the requirements outlined in *Inclusive Communities*.  85 Fed. Reg. at 60296.  Neither of these purported justifications is credible.

The Supreme Court did not cast doubt on the basic framework set forth in the 2013 Rule anywhere in its seminal *Inclusive Communities* decision.  To the contrary, the Court repeatedly took note of HUD's 2013 Rule and endorsed HUD's historical approach to disparate impact claims.  The Court based its analysis on the text of the FHA, overwhelming appellate court

precedent following the same path, and the 1988 enactment of the Fair Housing Amendments Act, which strengthened the FHA and ratified the three-part burden-shifting structure codified in the 2013 Rule. *Inclusive Communities*, 576 U.S. at 534.  The Court recognized that the burden-shifting framework for disparate impact claims, as codified in the 2013 Rule, "has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA." *Id.* at 540.  The Court further observed that the burden-shifting framework in 2013 Rule serves to strike a critical balance between the right of plaintiffs to exercise housing choice and combat discrimination and the ability of defendants to consider legitimate interests in crafting their policies or practices. *Id.* at 541-42.  *Inclusive Communities* did not compel HUD to establish a novel "pleading" requirements, create new defenses, or alter well-understood burdens of proof to tilt the scales decidedly in favor of property owners and mortgage lenders.  HUD cannot justify its new Rule on the basis of *Inclusive Communities*.

HUD fares no better when it claims that the 2020 Rule provides enhanced clarity.  In fact, the 2020 Rule is exceptionally difficult to understand.  It sets forth bewildering pleading requirements, conflates allegations and proof, and offers obtuse new defenses.  2020 Rule, 24 C.F.R. §§ 100.500(b)-(d).  Many words could be used to describe the new rule, but "clear' is not one of them.  The 2020 Rule raises far more questions than it answers, such as:

- What does it mean to "sufficiently plead facts" to support the five new elements of a disparate impact claim?

- What facts must a plaintiff allege to sufficiently plead that a challenged policy or practice is "arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective"?

- How can a plaintiff anticipate all the interests or objectives a defendant may claim to justify the policy or practice the plaintiff is challenging?

- What does "such as practical business, profit, policy, consideration" mean?

- What does it mean for a defendant, at the "pleading stage," to "establish" that a

plaintiff failed to make out a case by "showing" that a plaintiff has failed to sufficiently plead facts to "establish" the required elements of a prima facie case?

- What does "predict an occurrence of an outcome" mean?

- What does it mean for a prediction to "represent a valid interest"?

- Does the 2020 Rule alter pleading rules or motion practice in disparate impact cases in federal or state court – or only before HUD?

HUD's inability to provide a satisfactory explanation for why it has turned its 2013 Rule upside-down makes the 2020 Rule arbitrary and capricious, and it must be vacated.  *See Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 19 (D.D.C. 2009) ("[C]hange of course without a reasoned explanation is the quintessential example of an arbitrary and capricious action.").

### C.     HUD Improperly Created the 2020 Rule's "Outcome Prediction" Defense without Notice and Comment.

When it adopts new regulations, HUD is required both by the FHA and the APA to follow notice and comment procedures.  42 U.S.C. § 3614a; 5 U.S.C. § 553.  When it published its 2020 Rule, however, HUD disclosed for the first time a novel and diffuse "outcome prediction" defense that was never subject to notice and comment.  Because commenters did not have a fair opportunity to present their views on this newly-invented defense, and would have offered different criticisms than they lodged against the "algorithmic model" HUD initially proposed, the 2020 Rule must be vacated.  *See Natural Res. Def. Council, Inc. v. E.P.A.*, 824 F.2d 1258, 1284 (1st Cir. 1987) ("The essential inquiry is whether the commenters have had a fair opportunity to present their views on the contents of the final plan.  We must be satisfied, in other words, that given a new opportunity to comment, commenters would not have their first occasion to offer new and different criticisms which the Agency might find convincing.") (*quoting BASF Wyandotte Corp. v. Castle*, 598 F.2d 637, 642 (1st Cir. 1979)).

HUD's Proposed Rule introduced an "algorithmic model" defense that would shield defendants from FHA liability for policies or practices which utilize algorithms (a) based on "neutral inputs," such as credit risk or other permissible considerations in housing and lending; (b) considered the "industry standard," in their field; or (c) are analyzed by a neutral third party that determines the model is empirically derived, uses neutral inputs, is predictive of risk or another valid objective, and is statistically sound.  84 Fed. Reg. at 42862.  But in the 2020 Rule, HUD abruptly discarded the "algorithmic model" approach and announced a different, new defense allowing a defendant to avoid liability by demonstrating that the policy or practice being challenged "is intended to predict the occurrence of an outcome, the prediction represents a valid interest, and the outcome predicted by the policy or practice does not or would not have a disparate impact on protected classes compared to similarly situated individuals not part of the protected class."  85 Fed. Reg. at 60319, 2020 Rule, 24 C.F.R. § 100.500(d)(2)(i).

HUD acknowledges it discarded the "algorithmic model" defense because of the volume of criticism it received.  85 Fed. Reg. at 60319.  But that is hardly justification for  ignoring the public's role in vetting its confusing replacement.  HUD claims its new "outcome prediction" defense "achieves many of the goals of the proposed defense while addressing many of the concerns raised by commenters," but HUD has never given the public an opportunity to offer its own assessment of whether the "outcome prediction" defense is a workable, fair or reasonable way to achieve them.  *Id*.  A final rule that departs so much from the proposed rule that the final version cannot be considered the "logical outgrowth" of the proposed rule requires additional notice and comment.  *Natural Res. Def. Council,* 824 F.2d at 1283-1285 (promulgation of ground water protection requirements without notice and comment violated APA).

III.    **PLAINTIFFS AND THE VICTIMS OF DISCRIMINATION THEY SERVE WILL SUFFER IRREPARABLE HARM IF THE NEW RULE TAKES EFFECT.**

Implementation of the 2020 Rule in the midst of a global pandemic and accompanying housing crisis will cause Plaintiffs immediate, irreparable harm, even if the Court later sets the 2020 Rule aside.  Plaintiffs provide a range of services to vulnerable victims of housing and lending discrimination, including legal representation and education, and advocacy to landlords and policymakers on behalf of clients to enforce the requirements of the FHA.  Bergquist Decl., ¶ 5 (Ex. 1); Merjian Decl., ¶¶ 5, 7-8 (Ex. 2).  Plaintiff MFHC is Massachusetts' oldest full-service fair housing organization, and is dedicated to eliminating systemic housing discrimination and creating inclusive communities in Massachusetts.  MFHC focuses its work in the Springfield Metropolitan Area, which faces some of the highest rates of white/Latinx and white/Black segregation in the country.  Bergquist Decl., ¶¶ 5, 13.  MFHC relies on its legal enforcement program, including an active fair housing testing program, to combat housing discrimination and segregation.  *Id*. ¶ 7-8.  Housing Works is a community of people living with and affected by HIV/AIDS whose mission is to end the dual crises of homelessness and AIDS.  Merjian ¶¶ 3-4.  Housing Works provides legal services to help clients obtain housing and challenge discrimination.  *Id*. ¶ 5.  Housing Works has successfully prosecuted impact litigation regarding disability in New York City housing for over two decades.  *Id*. ¶ 7.  Housing Works uses disparate impact claims to secure judgments barring discrimination and to pressure some of the largest landlords in New York to change practices.  *Id.* ¶ 8.

The 2020 Rule's heightened pleading and proof requirements, as well as the novel defenses the 2020 Rule creates, are designed to, and will, deter victims of housing or lending discrimination from working with Plaintiffs to bring disparate impact claims because of the vast amount of information victims must seek to gather at the outset of a case in order to meet the

new pleading standards, including information in the exclusive possession of potential

defendants.  Bergquist Decl., ¶¶ 17-21; Merjian Decl., ¶¶ 26-29.  The 2020 Rule will require

Plaintiffs to divert resources from their existing programs to provide the assistance needed to

meet the 2020 Rule's improperly heightened pleading and proof requirements.  The 2020 Rule

will also require Plaintiffs to expend significant resources to reeducate victims of housing and

lending discrimination on their rights under the FHA.  Bergquist Decl., ¶ 49.  Compounding

these harms, the 2020 Rule dilutes the FHA's deterrent effect on discriminatory behavior in

housing and lending, making Plaintiffs' work more necessary, at the same time it renders that

work more difficult.  Merjian Decl., ¶¶ 14, 17.  Because the 2020 Rule is designed to make it

more difficult for victims to pursue disparate impact claims, the 2020 Rule weakens Plaintiffs'

leverage to advocate for FHA compliance with landlords, lenders and local governments.

Plaintiffs will have increased demands on their resources and fewer tools to combat housing and

lending discrimination, all in the middle of a pandemic that already strains the resources of

organizations at the frontlines of fighting housing insecurity.

Other service organizations that serve the entire range of protected classes are facing and

will face similar challenges to provide their critical services in the new, more challenging, and

confusing, regime HUD has created.  Barbour Decl., ¶¶ 6-16 (Ex. 3); Berman Decl., ¶¶ 11-13

(Ex. 4); Defranza Decl. ¶¶ 5-16 (Ex. 5); Edmondstone Decl., ¶¶ 22-29 (Ex. 6); Finfer Decl., ¶¶ 7-

15 (Ex. 7); Guisbond Decl., ¶¶ 10-22 (Ex. 8); Michalakes Decl., ¶¶ 7-15 (Ex. 9); Owens Decl.,

pp. 3-4 (Ex. 10); Paulino Decl.,  ¶¶ 7-16 (Ex. 11); Torpy Decl., ¶¶ 9- 20 (Ex. 12); Tyndal Decl.

¶¶ 20-24 (Ex. 13); Wimpey Decl., ¶¶ 10-13 (Ex. 14); Woods Decl. ¶¶ 7-17 (Ex. 15).  Deprived of

the powerful remedial tools Congress provided in the FHA to eradicate housing and lending

discrimination, these organizations will be severely restricted in their ability to advocate and

litigate for victims of housing discrimination, even as the pandemic has made the need for safe, affordable housing more vital than ever.

If it takes effect, the 2020 Rule will undermine the ability of all housing organizations to help victims of housing and lending discrimination vindicate their rights, further diluting the remedial and deterrent purposes of the FHA.  Given the interconnection of housing with every other facet of American life, from the quality of air one breathes to the rigor of the schools one's children attend, the ripple effect of hobbling disparate impact claims under the FHA will extend far beyond housing.  *See Avenue 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 503 (9th Cir. 2016) ("[H]ousing segregation both perpetuates and reflects this country's basic problems regarding race relations: educational disparities, police-community relations, crime levels, wealth inequality, and even access to basic needs such as clean water and clean air.")

The changes from established FHA practice in the 2020 Rule are designed to, and will, cause Plaintiffs to expend resources to meet the 2020 Rule's onerous new requirements, and curtail Plaintiffs' ability to fulfill their missions of eradicating systemic housing discrimination and creating inclusive communities.  Such changes in a non-profits' programming, and frustration of their mission is sufficient to demonstrate irreparable harm.  *See East Bay Sanctuary Covenant* v. *Barr*, 964 F.3d 832, 854 (9th Cir. 2020) (plaintiffs established a likelihood of irreparable harm where challenged rule "harms their mission of representing and assisting asylum seekers and results in a substantial loss of organizational funding" and "forces plaintiffs to overhaul their programs and pursue more complex and time-and-resource intensive forms of relief, resulting in plaintiffs' providing fewer services to fewer individuals.").

IV.     **THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR DELAYING THE EFFECTIVE DATE OF HUD'S NEW RULE.**

The third and fourth factors typically considered by the Court – the balance of harms and the public interest – "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.  In this case, both factors together weigh heavily in favor of postponing the effective date of the 2020 Rule.

If the 2020 Rule is permitted to take effect, but the Court later finds that it was invalid, fair housing advocates such as Plaintiffs, the clients they represent, the defendants they charge, the investigators and administrative law and judges at HUD, and potentially the courts that are adjudicating their claims, will all be whipsawed by two major shifts in applicable pleading rules, defenses and burdens of proof: first, when the 2020 Rule takes effect; and then, again, when it is set aside and the 2013 Rule and the underlying principles it codified once again control.  There is no good reason to permit such confusion – or such an irreparable waste of resources for everyone affected by these Rules.  If, as it proclaims, HUD wants to promote the "clarity" of the applicable rules, HUD should not oppose a stay of the effective date to allow for orderly judicial review of the validity of its new rule to be completed before the 2020 Rule it is allowed to take effect.  *See Washington v. Trump*, --F.Supp.3d --, 2020 WL 5568557 at *5 (E.D. Wash. Sept. 17, 2020) (finding government's burden in complying with nationwide preliminary injunction halting enforcement of mail delivery policy changes was "negligible").

Even if the Court ultimately finds that the 2020 Rule is valid, the limited stay of its effective date sought by Plaintiffs will not harm the public interest in any significant way.  There is no exigency here.  The existing 2013 Rule, by HUD's own acknowledgement, is not unlawful.  HUD may wish to put its ill-advised new policy into effect as soon as possible, but there is no

compelling reason to allow the 2020 Rule to take effect before the Court has had an opportunity to consider the serious challenges Plaintiffs have raised.

### Conclusion

For all of these reasons, the Court should exercise its authority under 5 U.S.C. § 705 to stay the effective date of HUD's 2020 Rule and issue a nationwide preliminary injunction barring HUD from applying the 2020 Rule pending conclusion of this review proceeding.

Respectfully submitted,

/s/ Lauren Sampson
Lauren Sampson (BBO # 704319)
Oren Sellstrom (BBO # 569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, 5th Floor
Boston, Massachusetts 02210
(617) 482-1145

Scott P. Lewis (BBO # 298740)
Mina S. Makarious (BBO # 675779)
Annie E. Lee (BBO # 705568)
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, Massachusetts 02109
(617) 621-6525

October 6, 2020

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing, and to all other parties in accordance with the Federal Rules of Civil Procedure and Local Rules.

/s/Mina S. Makarious

# ADDENDA

## 24 C.F.R. §§ 100.5 and 100.500 under 2020 Rule

**24 C.F.R. § 100.5**

(a) It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States. No person shall be subjected to discrimination because of race, color, religion, sex, handicap, familial status, or national origin in the sale, rental, or advertising of dwellings, in the provision of brokerage services, or in the availability of residential real estate-related transactions.

(b) This part provides the Department's interpretation of the coverage of the Fair Housing Act regarding discrimination related to the sale or rental of dwellings, the provision of services in connection therewith, and the availability of residential real estate-related transactions. The illustrations of unlawful housing discrimination in this part may be established by a practice's discriminatory effect, even if not motivated by discriminatory intent, and defenses and rebuttals to allegations of unlawful discriminatory effect may be made, consistent with the standards outlined in § 100.500. Guidance documents and other administrative actions and documents issued by HUD shall be consistent with the standards outlined in § 100.500.

(c) Nothing in this part relieves persons participating in a Federal or Federally-assisted program or activity from other requirements applicable to buildings and dwellings.

(d) Nothing in this part requires or encourages the collection of data with respect to race, color, religion, sex, handicap, familial status, or national origin.

**24 C.F.R. § 100.500**

(a) General. Liability may be established under the Fair Housing Act based on a specific policy's or practice's discriminatory effect on members of a protected class under the Fair Housing Act even if the specific practice was not motivated by a discriminatory intent.

(b) Pleading stage. At the pleading stage, to state a discriminatory effects claim based on an allegation that a specific, identifiable policy or practice has a discriminatory effect, a plaintiff or charging party (hereinafter, "plaintiff") must sufficiently plead facts to support each of the following elements:

> (1) That the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;

> (2) That the challenged policy or practice has a disproportionately adverse effect on members of a protected class;

> (3) That there is a robust causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the direct cause of the discriminatory effect;

> (4) That the alleged disparity caused by the policy or practice is significant; and

2

(5) That there is a direct relation between the injury asserted and the injurious conduct alleged.

(c) Burdens of proof in discriminatory effect cases. The burdens of proof to establish that a policy or practice has a discriminatory effect, are as follows:

(1) A plaintiff must prove by the preponderance of the evidence each of the elements in paragraphs (b)(2) through (5) of this section.

(2) A defendant or responding party (hereinafter, "defendant") may rebut a plaintiff's allegation under (b)(1) of this section that the challenged policy or practice is arbitrary, artificial, and unnecessary by producing evidence showing that the challenged policy or practice advances a valid interest (or interests) and is therefore not arbitrary, artificial, and unnecessary.

(3) If a defendant rebuts a plaintiff's assertion under paragraph (c)(1) of this section, the plaintiff must prove by the preponderance of the evidence either that the interest (or interests) advanced by the defendant are not valid or that a less discriminatory policy or practice exists that would serve the defendant's identified interest (or interests) in an equally effective manner without imposing materially greater costs on, or creating other material burdens for, the defendant.

(d) Defenses. The following defenses are available to a defendant in a discriminatory effect case.

(1) Pleading stage. The defendant may establish that a plaintiff has failed to sufficiently plead facts to support an element of a prima facie case under paragraph (b) of this section, including by showing that the defendant's policy or practice was reasonably necessary to comply with a third-party requirement, such as a:

(i) Federal, state, or local law;

(ii) Binding or controlling court, arbitral, administrative order or opinion; or

(iii) Binding or controlling regulatory, administrative or government guidance or requirement.

(2) After the pleading stage. The defendant may establish that the plaintiff has failed to meet the burden of proof to establish a discriminatory effects claim under paragraph (c) of this section, by demonstrating any of the following:

(i) The policy or practice is intended to predict an occurrence of an outcome, the prediction represents a valid interest, and the outcome predicted by the policy or practice does not or would not have a disparate impact on protected classes compared to similarly situated individuals not part of the protected class, with respect to the allegations under paragraph (b). This is not an adequate defense, however, if the plaintiff demonstrates that an alternative, less discriminatory policy or practice would result in the same outcome of the policy or practice,

without imposing materially greater costs on, or creating other material burdens for the defendant.

(ii) The plaintiff has failed to establish that a policy or practice has a discriminatory effect under paragraph (c) of this section.

(iii) The defendant's policy or practice is reasonably necessary to comply with a third party requirement, such as a:

> (A) Federal, state, or local law;
>
> (B) Binding or controlling court, arbitral, administrative order or opinion; or
>
> (C) Binding or controlling regulatory, administrative, or government guidance or requirement.

(e) Business of insurance laws. Nothing in this section is intended to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance.

(f) Remedies in discriminatory effect cases. In cases where liability is based solely on a discriminatory effect theory, remedies should be concentrated on eliminating or reforming the discriminatory practice so as to eliminate disparities between persons in a particular protected class and other persons. In administrative proceedings under 42 U.S.C. 3612(g) based solely on discriminatory effect theory, HUD will seek only equitable remedies, provided that where pecuniary damage is proved, HUD will seek compensatory damages or restitution; and provided further that HUD may pursue civil money penalties in discriminatory effect cases only where the defendant has previously been adjudged, within the last five years, to have committed unlawful housing discrimination under the Fair Housing Act, other than under this section.

(g) Severability. The framework of the burdens and defenses provisions are considered to be severable. If any provision is stayed or determined to be invalid or their applicability to any person or circumstances invalid, the remaining provisions shall be construed as to be given the maximum effect permitted by law.

**24 C.F.R. §§ 100.5 and 100.500 under 2013 Rule**

**24 C.F.R. § 100.5**

(a) It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States. No person shall be subjected to discrimination because of race, color, religion, sex, handicap, familial status, or national origin in the sale, rental, or advertising of dwellings, in the provision of brokerage services, or in the availability of residential real estate-related transactions.

(b) This part provides the Department's interpretation of the coverage of the Fair Housing Act regarding discrimination related to the sale or rental of dwellings, the provision of services in connection therewith, and the availability of residential real estate-related transactions. The illustrations of unlawful housing discrimination in this part may be established by a practice's discriminatory effect, even if not motivated by discriminatory intent, consistent with the standards outlined in § 100.500.

(c) Nothing in this part relieves persons participating in a Federal or Federally-assisted program or activity from other requirements applicable to buildings and dwellings.

**24 C.F.R. § 100.500**

Liability may be established under the Fair Housing Act based on a practice's discriminatory effect, as defined in paragraph (a) of this section, even if the practice was not motivated by a discriminatory intent. The practice may still be lawful if supported by a legally sufficient justification, as defined in paragraph (b) of this section. The burdens of proof for establishing a violation under this subpart are set forth in paragraph (c) of this section.

(a) Discriminatory effect. A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin.

(b) Legally sufficient justification.

    (1) A legally sufficient justification exists where the challenged practice:

        (i) Is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent, with respect to claims brought under 42 U.S.C. 3612, or defendant, with respect to claims brought under 42 U.S.C. 3613 or 3614; and

        (ii) Those interests could not be served by another practice that has a less discriminatory effect.

    (2) A legally sufficient justification must be supported by evidence and may not be hypothetical or speculative. The burdens of proof for establishing each of the two elements of a legally sufficient justification are set forth in paragraphs (c)(2) and (c)(3) of this section.

(c) Burdens of proof in discriminatory effects cases.

(1) The charging party, with respect to a claim brought under 42 U.S.C. 3612, or the plaintiff, with respect to a claim brought under 42 U.S.C. 3613 or 3614, has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect.

(2) Once the charging party or plaintiff satisfies the burden of proof set forth in paragraph (c)(1) of this section, the respondent or defendant has the burden of proving that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant.

(3) If the respondent or defendant satisfies the burden of proof set forth in paragraph (c)(2) of this section, the charging party or plaintiff may still prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect.

(d) Relationship to discriminatory intent. A demonstration that a practice is supported by a legally sufficient justification, as defined in paragraph (b) of this section, may not be used as a defense against a claim of intentional discrimination.