UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER and HOUSING WORKS, INC., <br><br>Plaintiffs, <br><br>v. <br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and BEN CARSON, Secretary of the Department of Housing and Urban Development, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) Civil Action No. ) ) ) ) ) ) ) ) ) |

### Declaration of Armen Merjian

I, Armen H. Merjian, upon my personal knowledge, and in accordance with 28 U.S.C. § 1746(2), declare as follows:

1. I am over the age of eighteen. This declaration is made based on my personal knowledge unless otherwise indicated.

2. I am the Senior Staff Attorney at Housing Works, Inc. ("Housing Works") and Legal Director of the HIV Law Project, Inc., a part of Housing Works.

### Background

3. Housing Works is a not-for-profit corporation organized under the laws of the State of New York with a principal place of business at 57 Willoughby St., Brooklyn, New York.

4. Housing Works is a community of people living with and affected by HIV/AIDS, whose mission is to end the dual crises of homelessness and AIDS. Housing Works is deeply committed to ensuring fair and affordable housing for marginalized, indigent, and low-income

communities. Founded in 1990, Housing Works provides a comprehensive array of services to more than 30,000 homeless and low-income New Yorkers living with and affected by HIV/AIDS.

5. Housing Works provides advocacy and comprehensive services consonant with its mission, including legal services to help clients obtain housing and challenge discriminatory housing policies and practices. Through its advocacy offices in New York City, Albany, New York, Washington, D.C., Puerto Rico, and Haiti, Housing Works fights for funding and legislation to ensure that all people living with HIV/AIDS have access to quality housing, healthcare, HIV prevention information, and other life-sustaining services, as well as legal protections from discrimination. Housing Works also provides supportive services including housing, healthcare, meals and nutritional counseling, mental health and substance use treatment, job training, and legal assistance.

6. As part of its housing services, Housing Works operates twelve residences to provide housing to eligible individuals living with HIV; people of transgender experience living with HIV; single men and women with active substance abuse issues; single women living with HIV and recently released from a correctional setting; unstably housed LGBTQ youth living with HIV; and families where the head-of-household is living with HIV.

7. Housing Works also provides free legal services to help clients obtain housing, through its Legal Department and the HIV Law Project. For over two decades, Housing Works' Legal Department has successfully prosecuted impact litigation on issues involving HIV/AIDS, homelessness, public benefits, and disability, housing and gender discrimination. In particular, Housing Works has been at the forefront of challenging source of income and disability discrimination in New York City's housing market.

8.     By litigating disparate impact claims under the Fair Housing Act ("FHA"), Housing Works has secured seminal legal decisions and successfully settled numerous cases against some of the largest landlords in New York and around the country on behalf of New Yorkers living with HIV/AIDS who rely upon public subsidies to secure and maintain their housing.

### The Deleterious Effect of the 2020 Rule

9.     The 2020 Rule will frustrate Housing Works' ability to fulfil our mission of eradicating systemic housing discrimination and creating inclusive communities because the 2020 Rule purports to arbitrarily – and unlawfully – raise the pleading standards that plaintiffs must meet to bring disparate impact claims, a critical tool for providing legal relief and redress to victims of housing discrimination. As New York's highest court has observed, "discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means." *300 Gramatan Ave. Associates v. State Div. of Human Rights*, 45 N.Y.2d 176, 183 (N.Y. 1978) (citations omitted).

10.    Often, the only way to combat "devious and subtle" discrimination is through disparate impact analysis, which rightfully obviates the need to prove discriminatory intent. By eviscerating the rules governing disparate impact claims, the 2020 Rule makes it difficult or impossible for Housing Works to challenge this discrimination on behalf of our client communities.

11.    I have seen that, throughout the United States, open discrimination against indigent and low-income individuals utilizing a government voucher or subsidy is rampant. Such discrimination is often a proxy for other legally prohibited kinds of discrimination, such as that based on race, ethnicity, national origin, or disability. Absent evidence of intentional discrimination, disparate impact claims under the FHA have proven highly effective in

combatting this discrimination, e.g., by demonstrating, as we have done, how refusals to accept governmental vouchers have a disparate, discriminatory impact on disabled people, who disproportionately rely upon such vouchers to secure and maintain the housing critical to their health and wellbeing.  The 2020 Rule will have a profoundly deleterious effect on the ability of victims of discrimination to challenge these practices, particularly given that the majority of states in the country do not expressly prohibit source-of-income discrimination.

12. In New York, as in much of the country, there is a severe shortage of affordable housing.  With a homeless population of 60,000, there is a desperate need to combat discrimination in all of its forms and open up the housing market to all New Yorkers in order to end the homeless nightmare for so many.  For those living with HIV and AIDS, housing is particularly essential, for "housing is healthcare," and people living with HIV and AIDS often face tremendous obstacles to securing and maintaining stable housing.  In addition to the human costs, the financial burdens of denying housing to those living with HIV and AIDS are also great, reflected in prolonged hospitalizations, frequent emergency room visits, and increased transmission of the illness.

13. Eviscerating disparate impact analysis under the FHA will have disastrous and immediate effects on this community.  It will not only prevent indigent individuals from ending their homelessness, exercising housing choice, and securing dignified housing for themselves and their families, but it will increase the human and fiscal costs for those who are disabled or living with maladies such as HIV/AIDS. In turn, this will increase hospitalizations and emergency-room visits, increase transmission of HIV, and profoundly affect the health and wellbeing of those who are indigent and living with the virus.  In short, the 2020 Rule is not only contrary to the law, but it contrary to public health and private dignity.

14. The 2020 Rule makes it exceedingly difficult or impossible to meet pleading standards, purporting to requiring proof heretofore secured through the discovery process. As a result, perfectly valid, and consequential, claims of discrimination will be jettisoned for lack of supporting information that can only be gleaned through discovery. This will only increase the demand on Housing Works for both emergency and permanent housing, a demand that already exceeds the supply, and will force the organization to divert scarce resources to providing a home for individuals unable to exercise housing choice because of the 2020 Rule.

15. To take but one more example, the 2020 Rule requires plaintiffs demonstrate that the alternative practices in question serve the defendants' identified interest "in an equally effective manner without imposing materially greater costs on, or creating other material burdens for, the defendant." 2020 Rule, Part 100.500(c)(3). The introduction of a cost-based defense is not only disturbing, but contrary to law: cost is not a defense to a claim of discrimination.

16. The moment that HUD implements the 2020 Rule, our clients will be precluded from bringing perfectly valid claims of discrimination, and thus from seeking judicial redress from the many neutral policies, e.g., minimum income requirements and minimum credit scores for those who, in fact, have no rental share on account of their full-rent subsidies or vouchers, or only a proportionate rental share, that perpetuate housing segregation.

17. In turn, this will make it nearly impossible for Housing Works to induce landlords and brokers to end these practices, for the 2020 Rule will permit these actors to discriminate with

impunity. This will, in short, cause immediate and irreparable harm to our communities.

Dated September 28, 2020

*Armen H. Merjian*
Armen H. Merjian
Senior Staff Attorney, Housing Works, Inc.
Legal Director, HIV Law Project, Inc.