UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER and HOUSING WORKS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and BEN CARSON, Secretary of the Department of Housing and Urban Development, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 3:20-cv-11765 |

**DECLARATION OF ANDREW DEFRANZA**

I, Andrew DeFranza, upon my personal knowledge, and in accordance with 28 U.S.C. § 1746(2), declare as follows:

1. I am over the age of eighteen. This declaration is made based on my personal knowledge and business records kept by Harborlight Community Partners ("HCP").

2. I serve as the Executive Director of HCP, a nonprofit community development corporation that develops, manages, operates and advocates for affordable, inclusive housing in Massachusetts' north shore. Our Mission started with the First Baptist Church in Beverly in the 1960s and today, manifests in our collaboration with communities to cultivate just, equitable, and sustainable housing opportunities vital to the health and strength of our entire region. By focusing on the housing needs of underserved populations and creating, preserving, and operating safe, affordable housing with supplemental supportive services, HCP strives to make homes available to all, because everyone deserves a home.

3. Advocacy and education are a critical part of our efforts. In particular, HCP works with our state delegation in Beverly, Massachusetts to promote affordable housing production and preservation through legislation and reform efforts at local, state, and federal levels, works with local communities, housing groups/trusts, and concerned citizens to foster economically and racially diverse communities, and pushes municipalities to fulfill a fair share of affordable housing opportunities in their communities.

4. In my role as Executive Director of HCP, I oversee all of our operations, including working with our state delegation on zoning issues and identifying sites for future affordable housing developments, and supervise our staff.

<u>The Impact of the Challenged Rule on HCP and Its Client Communities</u>

5. I understand that HUD has issued a final regulation on the disparate impact provisions of the Fair Housing Act (the "Final Rule"), and I have reviewed the rule.

6. The Final Rule will have a number of negative impacts on protected classes. In particular, the Final Rule will frustrate the efforts of organizations like HCP to combat discriminatory zoning policies that inhibit the development of affordable housing, thus perpetuating racial and economic segregation and restricting housing choice.

7. In Massachusetts, every community is permitted to create its own zoning regulations, which means that developers like HCP must navigate 351 different zoning policies. These policies can stop our work in its tracks—if there is no zoning allowance for multifamily housing, for example, we can neither permit nor build a multifamily building.

8. A considerable percentage of HCP's time and resources is spent pushing municipalities to adopt or allow zoning policies that would enable the creation and preservation of affordable housing. In our experience, restrictive zoning policies, which include but are not limited to limitations on height, setback, lot size, or multifamily use, enforce and perpetuate historic, government-sanctioned discrimination, erecting an invisible gate on White, wealthy communities across the state. A number of municipalities in Essex County were developed through single-family zoning and implicit or explicit policies that kept out homeowners of color. When White property owners oppose zoning variances or permitting multifamily buildings, the effect of their actions is to keep their communities White and wealthy.

9. In our advocacy and community education work, we continually point to the discriminatory nature of these zoning protections, which have a disproportionate effect on several protected classes. Our senior and supportive senior housing provides homes for elderly individuals; our family housing has a growing percentage of families of color and some with disabilities, while our individual and individual supportive housing is home to many with addiction and mental health struggles.

10. By building affordable housing across the state, rather than exclusively in a few communities, HCP expands housing choice and provides access to marginalized populations to a range of amenities, including green space, public transportation, and high-quality primary care, that form critical social determinants of health and well-being.

11. In the hundreds of community meetings we have attended for projects across the state, residents pushing for the strict enforcement of restrictive zoning policies have used coded or even openly racist language to describe their concerns. For example:

    a. When HCP sought to build 100 units of affordable housing in Hamilton, Massachusetts, a resident expressed shock that a developer would consider building affordable housing "near a school," even though the building would have been home to dozens of children.

    b. A resident once stated in a meeting that they were "concerned about undesirable people moving in from Lynn," a majority-minority city.

    c. A resident once stated their family was "concerned about the volume of kids in special ed in this project." Other residents have expressed that the local school system would be "overwhelmed" by an influx of children from low-income, minority communities.

    d. Many residents have expressed that they "wouldn't feel safe" with residents of an affordable housing project "in their neighborhood."

12. In effect, restrictive zoning regulations place power with extant landowners, who, due to decades of government-sanctioned discriminatory policies, are disproportionately middle- or high-income and White. This power is only counterbalanced by tools like the 2013 disparate impact regulation, which is an important mechanism for pushing municipalities to adopt more just and equitable zoning through advocacy or legal action, and the Affirmatively Furthering Fair Housing Rule, which placed some of the impetus for undoing the effects of segregation on municipalities.

13. In the absence of the Affirmatively Furthering Fair Housing Rule, the Final Rule will provide cover to cities and towns who use zoning regulations to create gated municipalities, to recreate the effects of redlining and racially restrictive covenants through facially neutral but nonetheless discriminatory means.

14. In addition, HCP has been told countless times that an extant zoning regime is not discriminatory but is merely in place to protect the value of landowners' homes—even though there is often no support for the proposition that housing prices will decrease if multifamily housing is constructed.

15. By enabling defendants to evade liability or even review if they can allege that the challenged policy serves a business or profit interest, HUD is ensuring that advocates will be unable to challenge discriminatory zoning practices that perpetuate segregation, as the agency is endorsing the commodification of exclusion.

16. In turn, this will make it near-impossible for developers like HCP to fulfill their mission of providing affordable, multifamily housing. Currently, over 75% of the Commonwealth of Massachusetts cannot be used for multifamily housing, even as the Commonwealth has acknowledged that developers need to build at least 17,000 unit for the next two decades to secure the kind of housing necessary to accommodate Massachusetts workers, retirees, students, and families. Without the ability to challenge or push for reforms to local zoning, we will never be able to accomplish that goal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information and belief.

DATED this 25 day of September 2020, at 11am

_____
Andrew DeFranza
Executive Director
Harborlight Community Partners