UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

MASSACHUSETTS FAIR HOUSING
   CENTER,

HOUSING WORKS, INC.,

    Plaintiffs,

       v.

U.S. DEPARTMENT OF HOUSING AND
   URBAN DEVELOPMENT,

BEN CARSON, Secretary of the U.S.
   Department of Housing and Urban
   Development,

    Defendants.

No. 3:20-cv-11765-MGM
The Hon. Mark G. Mastroianni

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
FOR A STAY OF THE EFFECTIVE DATE OF DEFENDANTS' FINAL RULE**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

   I.   Statutory and Regulatory Background ................................................................................. 2

      A.  The Fair Housing Act ................................................................................................ 2

      B.  HUD's 2013 Disparate Impact Rule ........................................................................ 3

      C.  *Texas Department of Housing and Community Affairs v. The Inclusive Communities Project, Inc.* .................................................................................................................... 3

      D.  Other Regulatory Developments ............................................................................. 5

      E.  HUD's Proposed Updates to its Disparate Impact Rule ........................................ 5

      F.  HUD's Final Disparate Impact Rule ........................................................................ 6

   II.  Plaintiffs' Claims ................................................................................................................. 6

      A.  Plaintiffs' Complaint ................................................................................................. 6

      B.  Plaintiffs' Motion to Stay the Effective Date of the Final Rule ............................. 7

STANDARD OF REVIEW ............................................................................................................. 8

ARGUMENT .................................................................................................................................. 9

I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF
     THEIR CLAIMS ..................................................................................................... 10

     A.  Plaintiffs Lack Standing to Maintain Their Claims ........................................... 10

          1.   MHFC and Housing Works Have Not Alleged Facts Demonstrating
               Organizational Injury-In-Fact ................................................................ 11

          2.   Plaintiffs Have Not Demonstrated That the Parts of the Final Rule
               They Challenge Have Caused Their Alleged Injuries or That
               This Court May Redress Their Injuries .................................................. 15

     B.  Plaintiffs' Facial Challenge to HUD's Final Rule Is Not Ripe for Adjudication
         But Should Be Addressed in Situation-Specific Litigation ................................ 18

     C.  Plaintiffs Are Unlikely to Succeed on their Claim that HUD's Final Rule
         Violates the APA .............................................................................................. 20

          1.   HUD's Final Rule Is in Accord with the Statute and Judicial
               Precedent .............................................................................................. 21

          2.   HUD's Final Rule Has a Rational Basis and Is Therefore Neither
               Arbitrary nor Capricious ........................................................................ 24

          3.   HUD's Final Rule Comports with the APA's Notice and Comment
               Requirements ........................................................................................ 25

          4.   Plaintiffs Have Waived Their Right to Pursue Their Claim That the
               Final Rule Exceeds the Agency's Rulemaking Authority, Which
               In Any Event Is Meritless ....................................................................... 27

II.  Plaintiffs Fail to Establish Irreparable Harm ............................................................ 28

III. The Balance of Equities and Public Interest Weigh Against Preliminary Relief ...................... 30

CONCLUSION ............................................................................................................... 30

## TABLE OF AUTHORITIES

### Cases

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ................................................................ 18

*Abigail All. for Better Access to Devel. Drugs v. Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006) ............ 12

*Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990) ........................................................... 24

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987) ...................................................... 26

*Allen v. Wright*, 468 U.S. 737 (1984) ....................................................................... 15

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ............................................................. 14

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987) .................................................. 30

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) ..................................... 16, 17, 23

*Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011) ........................................................ 10

*Assoc. Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104 (1st Cir. 1997) ................................................. 22

*Assoc. Fisheries of Maine, Inc. v. Evans*, 350 F. Supp. 2d 247 (D. Me. 2004) ................................... 26

*Associated Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401 (9th Cir. 1991).................. 29

*Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296 (2017) ............................................... 16, 23

*Bd. of Educ. v. Harris*, 444 U.S. 130 (1979) ............................................................................ 4

*Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281 (1974) ......................................... 9

*Braintree Labs. v. Citigroup Global Mkts.*, 622 F.3d 36 (1st Cir. 2010) ............................................ 8

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ............................................... 24

*Cent. Me. Power Co. v. Fed. Energy Regulatory Comm'n*, 252 F.3d 34 (1st Cir. 2001) ...................... 26

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151 (1st Cir. 2004)............................. 28

*Chevron, USA v. Nat. Res. Def. Council*, 467 U.S. 837 (1984) ................................................... 24

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971).........................................9, 22

*City of Lowell v. Enel N. Am., Inc.*, 705 F. Supp. 2d 116 (D. Mass. 2010) ................................... 29

*City of Taunton v. EPA*, 895 F.3d 120 (1st Cir. 2018)............................................................. 25

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................................... 13

*Clean Air Implementation Project v. EPA*, 150 F.3d 1200 (D.C. Cir. 1998) .............................. 20

*CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618 (1st Cir. 1995) .................... 29

*Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435 (6th Cir. 2004) .................. 27

*Comprehensive Health of Planned Parenthood Great Plains v. Hawley*, 903 F.3d 750 (8th Cir. 2018) ............... 20

*Cornish v. Dudas*, 540 F. Supp. 2d 61 (D.D.C. 2008)............................................................. 30

*Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103 (1st Cir. 2006)........................... 13

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) ............................ 8

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38 (1st Cir. 2020) .......... 17

*Darst-Webbe Tenant Ass'n v. St. Louis Hous. Auth.*, 417 F.3d 898 (8th Cir. 2005) ..................... 22

*Delta Constr. Co. v. EPA*, 783 F.3d 1291 (D.C. Cir. 2015).................................................... 16

*DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ................................................... 9

*Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016) ....................................................................... 11

*Edison Elec. Inst. v. OSHA*, 849 F.2d 611 (D.C. Cir. 1988) ................................................. 25

*Ellis v. City of Minneapolis*, 860 F.3d 1106 (8th Cir. 2017) ................................................... 23

*Envt. Working Grp. v. U.S. Food & Drug Admin.*, 301 F. Supp. 3d 165 (D.D.C. 2018) ...............................15

*Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1 (D. Mass. 2020) .......................................11

*Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014) ............................................................14

*Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268 (D.C. Cir. 1994) ...................13

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ..................................................................9

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) ...........................................................17

*Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, *aff'd*, 808 F.3d 905 (D.C. Cir. 2015)...................14

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) .........................................14, 15

*Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29 (2d Cir. 2016) ......................................16, 23

*Graoch Assoc. v. Louisville/Jefferson Cnty. Metro Human Rels. Comm.*, 508 F.3d 366 (6th Cir. 2007) .......16, 23

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) .................................................................................4

*Hallmark Devels., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276 (11th Cir. 2006) ...............................16, 23

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ....................................................................11

*Haywood v. Drown*, 556 U.S. 729 (2009)..........................................................................................8

*Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896 (9th Cir. 2009) ....................................................8

*In re Navy Chaplaincy*, 534 F.3d 756 (D.C. Cir. 2008) ..................................................................29

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011)...........................................21, 22

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) .............................................................10, 15, 17

*Keep Chi. Livable v. City of Chi.*, 913 F.3d 618 (7th Cir. 2019)........................................................14

*Kowalski v. Tesmer*, 543 U.S. 125 (2004).......................................................................................13

*La. Envt. Action Network v. Browner*, 87 F.3d 1379 (D.C. Cir. 1996) ............................................19

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ...............13

*Lake Carriers' Ass'n v. EPA*, 652 F.3d 1 (D.C. Cir. 2011)............................................................27, 28

*Lehn v. Holmes*, 364 F.3d 862 (7th Cir. 2004) ..............................................................................19

*Lewis v. Casey*, 518 U.S. 343 (1996) ............................................................................................8

*Luceus v. Rhode Island*, 923 F.3d 255 (1st Cir. 2019).....................................................................16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................................................9, 15

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) .........................................................................19

*Maine v. Kreps*, 563 F.2d 1052 (1st Cir. 1977)..............................................................................22

*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003).....................................................................18

*McGrath v. HUD*, 722 F. Supp. 902 (D. Mass. 1989) .................................................................22

*MD/DC/DE Broad. Ass'n v. FCC*, 236 F.3d 13 (D.C. Cir. 2001) ............................................26

*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999)..............................26

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)...................24, 26

*Munaf v. Geren*, 553 U.S. 674 (2008) ........................................................................................ 8

*Munoz-Mendoza v. Pierce*, 711 F.2d 421 (1st Cir. 1983) ...........................................................11

*N.H. Hosp. Ass'n v. Burwell*, No. 15-cv-460, 2016 WL 1048023 (D.N.H. Mar. 11, 2016) .......... 8

*NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) ......................................21, 28

*NAACP, Boston Chapter v. Harris*, 607 F.2d 514 (1st Cir. 1979)..........................................17

*Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351 (6th Cir. 1995) ..................................21, 28

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) ............... 23, 24, 25

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803 (2003) ....................................19

*Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428 (D.C. Cir. 1995) ....................15

*Nat. Res. Def. Council v. EPA*, 824 F.2d 1258 (1st Cir. 1987) ...........................................26

*Neighborhood Ass'n of the Back Bay, Inc. v. Fed. Transit Admin.*,
    407 F. Supp. 2d 323 (D. Mass. 2005), *aff'd*, 463 F.3d 50 (1st Cir. 2006) .................................29

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................................30

*Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251 (D.C. Cir. 2004)......................................27

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998) .......................................................20

*Ojo v. Farmers Group, Inc.*, 600 F.3d 1205 (9th Cir. 2010)...........................................16, 24

*Pa. Prison Soc. v. Cortes*, 508 F.3d 156 (3d Cir. 2007) .........................................................12

*Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680 (1991)........................................................23, 24

*Ponce Paramedical Coll., Inc. v. U.S. Dep't of Educ.*, 858 F. Supp. 303 (D.P.R. 1994) ...............25, 26

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*,
    797 F.3d 1087, 1096 (D.C. Cir. 2015).....................................................................................15

*Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 566 F. Supp. 2d 995 (D.S.D. 2008) ...............27

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) ....................................................................10, 18

*Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993) .........................................................19

*Reno v. Flores*, 507 U.S. 292 (1993) .....................................................................................21

*Ricci v. DeStefano*, 557 U.S. 557 (2009)................................................................................16

*River St. Donuts, LLC v. Napolitano*, 558 F.3d 111 (1st Cir. 2009) ................................ 9

*Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78 (1st Cir. 2013)............................18, 20

*Ross-Simons of Warwick v. Baccarat*, 102 F.3d 12 (1st Cir. 1996) ................................ 8

*Ry. Labor Execs.' Ass'n v. ICC*, 914 F.2d 276 (D.C. Cir. 1990) ................................ 23

*Shield Our Const. Rts. & Justice v. Hicks*, No. 09-cv-940, 2009 WL 3747199 (D. Md. Nov. 4, 2009) ........ 13

*Sierra Club v. EPA*, 754 F.3d 995 (D.C. Cir. 2014) ................................ 11

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ................................11, 12

*Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142 (D.D.C. 2011)................................ 29

*Smith v. City of Jackson*, 544 U.S. 228 (2005)................................ 4

*Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83 (1998) ................................ 8

*Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002) ................................ 27

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................ 11

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................................ 10

*Tex. Dep't of Hous. & Cmty Affairs v. The Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015) ................*passim*

*Texas v. EPA*, 726 F.3d 180 (D.C. Cir. 2013)................................ 16

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) ................................ 8

*Texas v. United States*, 523 U.S. 296 (1998)................................ 18

*Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972) ................................ 2

*Turlock Irrigation Dist. v. FERC*, 786 F.3d 18 (D.C. Cir. 2015) ................................ 14

*Tutein v. Daley*, 116 F. Supp. 2d 205 (D. Mass. 1999)................................19, 20

*Unemployment Comp. Comm'n v. Aragon*, 329 U.S. 143 (1946) ................................ 27

*United Source One, Inc. v. U.S. Dep't of Agric., Food Safety & Inspection Serv.*, 865 F.3d 710 (D.C. Cir. 2017)................................ 26

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952) ................................ 27

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ................................ 21

*United States v. Salerno*, 481 U.S. 739 (1987) ................................ 21

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358 (1st Cir. 2001)................................ 8

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989)................................23, 25

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)................................8, 30

*Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751 (7th Cir. 2008) ................................ 19

**Statutes**

5 U.S.C. § 701 .................................................................................................................. 1

5 U.S.C. § 705 ............................................................................................................ *passim*

42 U.S.C. § 3601 ........................................................................................................... 2, 4

42 U.S.C. § 3604 ......................................................................................................... *passim*

42 U.S.C. § 3605 ......................................................................................................... *passim*

42 U.S.C. § 3608 .................................................................................................. 3, 22, 30

42 U.S.C. § 3614a .......................................................................................... 3, 21, 28, 30

42 U.S.C. §§ 3601–19 ..................................................................................................... 2

**Regulations**

24 C.F.R. § 100.5 ............................................................................................................ 6

24 C.F.R. § 100.70 .......................................................................................................... 6

24 C.F.R. § 100.120 ........................................................................................................ 6

24 C.F.R. § 100.130 ........................................................................................................ 6

24 C.F.R. § 100.500 ................................................................................................... *passim*

78 Fed. Reg. 11460 (Feb. 15, 2013) ............................................................................... 3

82 Fed. Reg. 22344 (May 15, 2017) ............................................................................... 5

83 Fed. Reg. 28560 (June 20, 2018) ............................................................................... 5

84 Fed. Reg. 42854 (Aug. 19, 2019) ........................................................................... 5, 6

85 Fed. Reg. 60288 (Sept. 24, 2020) ........................................................................ *passim*

**Other Authorities**

Executive Orders 13771 ................................................................................................. 5

Executive Orders 13777 ................................................................................................. 5

U.S. Dep't of the Treasury, Report: A Financial System That Creates Economic Opportunities, Asset Management and Insurance (Oct. 26, 2017) ......................................................... 5

**INTRODUCTION**

Title VIII of the Civil Rights Act of 1968, known as the Fair Housing Act ("FHA"), prohibits discrimination in the sale, rental, or financing of dwellings and in other housing-related activities on the basis of race, color, religion, sex, disability, familial status, or national origin. The Act provides authority and responsibility for the U.S. Department of Housing and Urban Development ("HUD") to interpret and enforce the statute and to make rules implementing the Act. HUD and the courts have long interpreted the FHA to prohibit practices with an unjustified discriminatory effect (also known as "disparate impact"), although there has been some variation in the application of the discriminatory effects standard. In 2013, for purposes of providing nationwide consistency, HUD promulgated a regulation formalizing the agency's long-held recognition of discriminatory effects liability (the "2013 Rule"). This year, HUD issued a new Final Rule to incorporate more recent Supreme Court and courts of appeals interpretations of the discriminatory effects standard to better effectuate the purposes of the Act (the "Final Rule").

Plaintiffs, two fair housing organizations, have brought a facial challenge to HUD's Final Rule and now seek a stay under § 705 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, 705, to delay the effective date of HUD's Rule pending judicial resolution of their challenge. Plaintiffs, however, have failed to satisfy their burden of demonstrating that they are entitled to a stay: they cannot show a likelihood of success of their challenge; they have not demonstrated irreparable harm arising from the Final Rule going into effect; and they cannot show that the balance of harms and the public interest favor delaying the effective date of the Rule.

Foremost, Plaintiffs fail to meet their burden of establishing that this Court even has subject matter jurisdiction over their challenge. Plaintiffs cannot establish that they have Article III standing to maintain their claims. They fail to (i) credibly allege imminent injuries to their organizational missions, (ii) reasonably trace their alleged injuries to HUD's Final Rule rather than the judicial precedents it incorporates, and (iii) demonstrate that an order of this Court setting aside the Rule is likely to redress their alleged injuries. Nor can Plaintiffs show that their facial challenge to HUD's Rule

1

is ripe for judicial resolution at this time. Rather, any judicial review of the Rule would be more appropriately conducted in situation-specific litigation where the Rule's application could be better defined and therefore its reasonableness properly evaluated.

Even if this Court were to reach the merits of Plaintiffs' challenge, Plaintiffs are unlikely to succeed. In light of the deference due to HUD's interpretation of the FHA and this Court's narrow role in evaluating HUD's Final Rule, this Court should conclude that the Rule permissibly incorporates Supreme Court and courts of appeals precedent concerning the application of the disparate impact standard and that HUD has a rational basis for its decisions. Nor can Plaintiffs show that HUD's Rule violates the APA's notice and comment requirements; the Final Rule is a logical outgrowth of HUD's proposed rule, and commenters had sufficient notice of HUD's intent.

Plaintiffs' failure to meet their burden of showing irreparable harm from the Final Rule going into effect also dooms their challenge. Like Plaintiffs' deficient assertions of standing, Plaintiffs offer nothing more than impermissibly speculative assertions of harms to their organizational missions. Compared with HUD's strong interest in seeing its Rule go into effect, Plaintiffs' failure to demonstrate a likelihood of success on the merits or showing of irreparable harm means the balance of harms and the public interest weigh in favor of denying Plaintiffs' request for a stay.

This Court should deny Plaintiffs' motion.

## BACKGROUND

## I.  STATUTORY AND REGULATORY BACKGROUND

### A.  The Fair Housing Act

The Fair Housing Act, Pub. L. No. 90-284, 82 Stat. 81 (1968) (codified as amended at 42 U.S.C. §§ 3601–19), was enacted "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601; *see also Tex. Dep't of Hous. & Cmty Affairs v. The Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539 (2015) (recognizing that the FHA is intended to "eradicate" discriminatory practices related to housing); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972) (recognizing the "broad and inclusive" language of the Act). To that end, the FHA makes

it unlawful, among other things:

> [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a); *see also id.* § 3604(f)(1) (prohibiting actions that "otherwise make unavailable or deny[] a dwelling . . . because of a handicap"). The FHA also makes it unlawful, "because of" one of the seven prohibited bases, to "discriminate against any person … in the provision of services or facilities in connection" with the sale or rental of a dwelling. *Id.* § 3604(b), (f)(2). And the FHA makes it unlawful "because of" the same bases "to discriminate against any person in making available …, or in the terms or conditions of … providing other financial assistance" related to "purchasing, constructing, improving, repairing, or maintaining a dwelling." *Id.* § 3605. Congress expressly granted HUD the authority to administer and to issue regulations interpreting the FHA. *Id.* §§ 3608, 3614a.

## B.  HUD's 2013 Disparate Impact Rule

HUD published a final rule interpreting §§ 3604(a) and 3605(a) on February 15, 2013. *See* HUD, Implementation of the Fair Housing Act's Discriminatory Effects Standard ("2013 Rule"), 78 Fed. Reg. 11460 (Feb. 15, 2013). HUD's 2013 Rule formalized HUD's longstanding interpretation that disparate impact liability is available under the Act. *Id.* HUD's 2013 Rule also incorporated a burden-shifting framework for analyzing disparate impact claims under the FHA, relying in part on existing FHA case law, decisions by HUD's administrative law judges, and Title VII of the Civil Rights Act of 1964 (which prohibits employment discrimination). *See* 78 Fed. Reg. at 11481–82.

## C.  *Texas Department of Housing and Community Affairs v. The Inclusive Communities Project, Inc.*

In 2015, the Supreme Court confirmed that the FHA provides for discriminatory effects liability. *See Inclusive Cmtys.*, 576 U.S. at 532–35. The Court referenced HUD's 2013 Rule, but did not rely on it for its holding. Rather, the Court found that Congress's use of the phrase "otherwise make unavailable" in § 3604(a) and the term "discriminate" in § 3605(a) paralleled language that the Court had previously held to provide for discriminatory effects liability under other civil rights statutes. *Id.* at

3

534 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); *Bd. of Educ. v. Harris*, 444 U.S. 130 (1979); *Smith v. City of Jackson*, 544 U.S. 228 (2005)). Moreover, the Court held that Congress's amendment of the FHA in 1988 without altering the relevant text of §§ 3604(a) or 3605(a) indicated that Congress "accepted and ratified the unanimous [pre-1988] holdings of the [c]ourts of [a]ppeals finding disparate-impact liability." *Id.* at 536. The Court further held that Congress's addition of provisions that presuppose disparate impact liability as part of the 1988 amendments further provided "convincing confirmation of Congress' understanding that disparate-impact liability exists under the FHA." *Id.* at 537. Finally, the Court observed that disparate impact claims are "consistent with the FHA's central purpose" of "eradicat[ing] discriminatory practices within a sector of our [n]ation's economy." *Id.* at 539 (citing 42 U.S.C. § 3601). The Court recognized that "vestiges remain today, intertwined with the country's economic and social life," of unconstitutional *de jure* residential segregation by race, and concluded that disparate impact liability helps to "counteract unconscious prejudices and disguised animus." *Id.* at 528, 540.

The Court explained that, from its first decision to recognize disparate impact liability, in *Griggs v. Duke Power Co.*, it "put important limits" on the scope of liability. *Inclusive Cmtys.*, 576 U.S. at 531. *Griggs* delineated these limits as a "business necessity" defense that "does not prohibit hiring criteria with a 'manifest relationship' to job performance." *Id.* (quoting *Griggs*, 401 U.S. at 431–32). Similarly, after holding that the FHA provided for disparate impact liability, the Court noted that under the FHA "disparate-impact liability *has always been* properly limited in key respects." *Id.* at 540 (emphasis added). *Inclusive Communities* relied on *Griggs* to explain that disparate impact liability under the FHA "mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the displacement of valid governmental policies." *Id.* (quoting *Griggs*, 401 U.S. at 431).

The Court then sketched out several such limitations, including: (i) providing "housing authorities and private developers leeway to state and explain the valid interest served by their policies … analogous to the business necessity standard under Title VII," *id.* at 541; (ii) requiring that a "claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or

policies causing that disparity," *id*.; and (iii) "striv[ing] to design [remedies] to eliminate racial disparities through race-neutral means," *id*. at 545.

### D.  Other Regulatory Developments

In May 2017, HUD published a notice in the Federal Register pursuant to Executive Orders 13771 and 13777, inviting public comment to assist HUD in identifying existing regulations that might be outdated, ineffective, or excessively burdensome. *See* HUD, Reducing Regulatory Burden; Enforcing the Regulatory Reform Agenda Under Executive Order 13777, 82 Fed. Reg. 22344 (May 15, 2017). HUD received numerous comments about HUD's 2013 Rule, many of which referenced the Supreme Court's *Inclusive Communities* decision. Additionally, in October 2017, the Department of the Treasury issued a report that recommended that HUD reconsider application of the 2013 Rule, especially in the context of the insurance industry. *See* U.S. Dep't of the Treasury, Report: A Financial System That Creates Economic Opportunities, Asset Management and Insurance (Oct. 26, 2017), www.treasury.gov/press-center/press-releases/Documents/A-Financial-System-That-Creates-Economic-Opportunities-Asset_Management-Insurance.pdf.

### E.  HUD's Proposed Updates to its Disparate Impact Rule

In response to these developments, in June 2018, HUD published an advanced notice of proposed rulemaking in the Federal Register, inviting comments on possible amendment to its 2013 Rule. *See* HUD, Reconsideration of HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 83 Fed. Reg. 28560 (June 20, 2018). HUD received and reviewed 1,923 comments.

HUD then published a proposed rule in the Federal Register in August 2019. *See* HUD, HUD's Implementation of the Fair Housing Act's Disparate Impact Standard ("Proposed Rule"), 84 Fed. Reg. 42854 (Aug. 19, 2019). The Proposed Rule offered an updated disparate impact standard and suggested other amendments. In particular, HUD proposed implementing a burden-shifting framework that more closely aligns with *Inclusive Communities*. *Id*. at 42858. The proposed revisions also included examples of defenses that a defendant could use to rebut a plaintiff's *prima facie* case, including a showing that the defendant's discretion was materially limited, that the defendant's use of

5

a risk assessment algorithm was non-discriminatory, or that the plaintiff had simply failed to plead a *prima facie* case. *Id.* at 42859. HUD received and reviewed 45,758 comments on the Proposed Rule from interested entities, including individuals, fair housing and legal aid organizations, state and local fair housing agencies, state attorneys general, state housing finance agencies, public housing agencies, insurance companies, insurance trade associations, mortgage lenders, credit unions, banking trade associations, real estate agents, and law firms.

### F. HUD's Final Disparate Impact Rule

HUD published its final disparate impact rule on its website on September 3, 2020, and in the Federal Register on September 24, 2020. *See* HUD, HUD's Implementation of the Fair Housing Act's Disparate Impact Standard ("Final Rule"), 85 Fed. Reg. 60288 (Sept. 24, 2020) (to be codified at 24 C.F.R. § 100.5(b), 100.70(d)(5), 100.120(b), 100.130(b), 100.500). The effective date of the Final Rule is October 26, 2020. *See id.* at 60288.

HUD updated its 2013 Rule to clarify the agency's interpretation of what constitutes discriminatory effects liability with the Supreme Court's opinion in *Inclusive Communities* and to incorporate limitations that other courts have placed on disparate impact claims. *See id.* at 60296. HUD clarified that the Final Rule does not alter the rights and protections available under the FHA. *See id.* at 60297. HUD also revised its examples of defenses a defendant might employ to rebut the plaintiff's *prima facie* showing, and, based on public comments and further consideration, narrowed one of its sample defenses. *Id.* at 60289–90, 60319.

## II. PLAINTIFFS' CLAIMS

### A. Plaintiffs' Complaint

Plaintiffs filed this action on September 28, 2020. *See* Compl., ECF No. 1. Plaintiff Massachusetts Fair Housing Center ("MHFC") is located in Holyoke, Massachusetts. *Id.* ¶ 7. Its mission is to "eliminat[e] systematic housing discrimination" and to "creat[e] inclusive communities in Massachusetts. *Id.* ¶ 8. It provides free legal services, conducts housing discrimination testing," "accepts over 300 housing discrimination complaints per year," and "provides extensive education and

outreach services, including training on issues of fair housing and fair lending." *Id.* ¶¶ 9–12. MFHC also advocates for policy changes. *Id.* ¶ 13.

Plaintiff Housing Works, Inc. is a nonprofit organization and "community of people" located in Brooklyn, New York. *Id.* ¶¶ 17–18. Its mission is to end homelessness and AIDS. *Id.* ¶ 18. Housing Works provides advocacy and "comprehensive services," including legal services, to help clients obtain housing and challenge discriminatory housing policies and practices. *Id.* ¶ 19.

Plaintiffs allege that HUD's Final Rule: (i) is inconsistent with the FHA and judicial precedent; (ii) improperly imposes new pleading requirements; (iii) improperly creates new defenses; and (iv) unreasonably imposes new burdens of proof. *Id.* ¶¶ 35–94. They allege that HUD's Final Rule violates the APA because it is contrary to law, arbitrary and capricious, was promulgated without sufficient notice and comment; and was promulgated without lawful authority. *Id.* ¶¶ 95–127 (Counts I–IV). Plaintiffs thus seek a stay under § 705 of the APA postponing the effective date of HUD's Final Rule pending judicial review; a declaration that the Final Rule violates the APA; and vacatur of the Final Rule under § 706 of the APA. *Id.*, Prayer for Relief.

**B. Plaintiffs' Motion to Stay the Effective Date of the Final Rule**

Plaintiffs filed their motion for a preliminary injunction under § 705 of the APA on October 6, 2020, 32 days after HUD published its Final Rule on its website. *See* Pls.' Mot. for Prelim. Inj. Under 5 U.S.C. § 705 to Postpone Effective Date of HUD's Final Rule ("Pls.' Stay Mot."); ECF No. 11; Pls.' Mem. in Supp. of Stay Mot. ("Pls.' Mem."), ECF No. 12. Plaintiffs contend they are entitled to a nationwide preliminary injunction pending this Court's review of their claims on the merits because they believe: (i) they are likely to succeed on the merits of their claims that HUD's Final Rule is contrary to law, arbitrary and capricious, and does not comply with the APA's notice and comment requirement; (ii) allowing the Rule to take effect will cause irreparable injury to Plaintiffs as well as "the communities and victims they represent, and similar advocacy organizations throughout the country;" and (iii) there is no reason to let the Rule take effect before this Court conducts its review and there would be "confusion" and a "waste of private and public resources" if the Final Rule went

into effect but were later set aside. Pls.' Mem. at 4–5.

## STANDARD OF REVIEW

Section 705 of the APA authorizes "the reviewing court" to stay "the effective date of an agency action" pending judicial review "to prevent irreparable injury." 5 U.S.C. § 705. The factors governing issuance of a preliminary injunction also govern issuance of a § 705 stay. *See, e.g., Texas v. EPA*, 829 F.3d 405, 424, 435 (5th Cir. 2016); *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009); *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *N.H. Hosp. Ass'n v. Burwell*, No. 15-cv-460, 2016 WL 1048023, at *5 (D.N.H. Mar. 11, 2016).

A preliminary injunction, in turn, is "an extraordinary and drastic remedy" that "is never be awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A plaintiff is entitled to such "extraordinary remedy" only "upon a clear showing" that (i) it is likely to succeed on the merits; (ii) it is likely to suffer irreparable harm in the absence of preliminary relief; (iii) the balance of equities tips in its favor; and (iv) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). "[T]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Braintree Labs. v. Citigroup Global Mkts.*, 622 F.3d 36, 42–43 (1st Cir. 2010); *see also Ross-Simons of Warwick v. Baccarat*, 102 F.3d 12, 16 (1st Cir. 1996).

Whether a court has subject-matter jurisdiction over the plaintiff's claims is an essential element of the likelihood-of-success analysis. Subject matter jurisdiction determines whether a court has the power to entertain a particular claim, which is a condition precedent to reaching the merits of a legal dispute. *See Haywood v. Drown*, 556 U.S. 729, 755 (2009) (Thomas, J., dissenting). "Without jurisdiction," however, a "court cannot proceed at all in any cause." In other words, "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 93–94 (1998). Standing is a jurisdictional requirement. *See Lewis v. Casey,* 518 U.S. 343, 349 n.1 (1996). So, too, is the determination of whether a claim is ripe for judicial review. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362–63 (1st Cir. 2001). Plaintiffs bear the burden of establishing that this Court has

jurisdiction over their claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Under the APA, a court's review of final agency action is highly deferential, and the agency's actions are presumed to be valid. *See River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). "[A] court is not to substitute its judgment for that of the agency," *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)), but instead to assess only whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment," *id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Thus, a reviewing court's only role is to "determine whether the agency's decision is supported by a rational basis, and if so, [it] must affirm." *River St. Donuts*, 558 F.3d at 114 (citing *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 290 (1974)).

## ARGUMENT

This Court should deny Plaintiffs' motion under § 705 of the APA to stay the effective date of HUD's Final Rule because Plaintiffs fail to meet their burden of demonstrating they are entitled to preliminary relief. As shown below, Plaintiffs are unlikely to succeed on the merits of their claims because they fail to show this Court has subject-matter jurisdiction over this case. Plaintiffs lack Article III standing to pursue their claims because they have not shown that the Rule will imminently injure them in a way that is concrete and particularized rather than speculative. Nor can they show that their alleged injuries are fairly traceable to HUD's Final Rule rather than to third parties not before the Court or to judicial interpretations of the FHA that the Rule incorporates. Plaintiffs also fail to show that the relief they seek is likely to redress their alleged injuries in light of the existing case law that would continue to apply to FHA disparate-impact claims regardless of the Rule. Similarly, Plaintiffs' facial attack on the Rule is not ripe for review, and any challenge to the Rule should be addressed in situation-specific litigation.

Nor, contrary to Plaintiffs' contentions, are Plaintiffs likely to succeed on the merits of their claims that HUD's Final Rule is contrary to law or violates the APA. Rather, the Rule permissibly sets a nationwide standard that incorporates judicial precedent, including the Supreme Court's *Inclusive*

*Communities* decision. The Rule also reflects HUD's reasonable interpretation of §§ 3604(a) and 3605(a), which HUD is charged with administering and to which this Court should defer. Additionally, because the changes in the Rule are a reasonable outgrowth of HUD's proposed rule, Plaintiffs cannot show that the Rule violates the APA's notice and comment requirements.

Second, Plaintiffs fail to show irreparable harm should the Rule go into effect. Plaintiffs' vague and undocumented claims of economic harm to their organizational missions are far from sufficient to justify the extraordinary remedy of preliminary injunctive relief.

Finally, the balance of harms and the public interest weigh in favor of allowing the Rule to go into effect both because of Plaintiffs' failure to show any real harm and because of the public interest in allowing HUD to exercise its Congressionally-delegated authority to interpret and enforce the FHA.

# I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

## A.  Plaintiffs Lack Standing to Maintain Their Claims

This Court lacks subject-matter jurisdiction over Plaintiffs' claims because Plaintiffs fail to meet their burden of establishing that they have Article III standing. When a plaintiff lacks standing, the resulting litigation cannot be fairly called "a case[] or controvers[y]," and the court has no power to decide "questions of law." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132, 134 (2011). Plaintiffs' reliance on conjectural and non-cognizable injuries that are, if anything, caused by established case law, requires this Court to deny their stay motion out of the gate for lack of standing. To demonstrate standing, "a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). As to the first prong, "the injury 'must be concrete and particularized' and 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014)). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Driehaus*, 573 U.S. at 158. "Where 'injury' and

'cause' are not obvious, the plaintiff must plead their existence in [her] complaint with a fair degree of specificity." *Munoz-Mendoza v. Pierce*, 711 F.2d 421, 425 (1st Cir. 1983).

   In this case, because neither MHFC nor Housing Works are the "object" of HUD's Final Rule, "standing is ordinarily *substantially* more difficult to establish." *Sierra Club v. EPA*, 754 F.3d 995, 999 (D.C. Cir. 2014) (emphasis added). And as organizations, Plaintiffs can only have standing to sue in their own right—"organizational standing"— if they have "been frustrated by defendants' … practices in [their] efforts to [provide] … services" and have experienced a "consequent drain on the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982); *see also Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1, 5 (D. Mass. 2020), *appeal filed*, No. 20-1429 (1st Cir. Apr. 14, 2020).[1] But an organization lacks standing to sue based on "a mere 'interest in a problem,' no matter how longstanding the interest and … how qualified the organization is in evaluating the problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

### 1. MHFC and Housing Works Have Not Alleged Facts Demonstrating Organizational Injury-In-Fact

   Plaintiffs provide a litany of potential grievances as a consequence of HUD's Final Rule, Compl. ¶¶ 27–34, but none satisfy the *Havens* test. *First*, according to Plaintiffs, the Final Rule's heightened pleading and proof requirements will "frustrate the Plaintiffs' ability to fulfill their missions of eradicating systemic housing discrimination and creating inclusive communities." Compl. ¶ 26; *see also* Decl. of Meris Bergquist ("Bergquist Decl.") ¶ 43, ECF No. 12-1 (asserting that "[t]he 2020 Rule strikes at the heart of MFHC's mission, imposing near-insurmountable barriers to the achievement of core institutional goals."); Merjian Decl. ¶ 9 (asserting that the Rule "will frustrate Housing Works' ability to fulfill our mission of eradicating systemic housing discrimination and creating inclusive communities"). But "a mere interest in a problem, no matter how longstanding the

---

[1] Nor does Plaintiff Housing Works establish associational standing, despite describing itself as a "community of people," Decl. of Armen Merjian ("Merjian Decl.") ¶ 4, ECF No. 12-2, because it fails to "'identify [a] member[] who has suffered the requisite harm.'" *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)); *see generally* Merjian Decl.

interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA." *Sierra Club*, 405 U.S. at 739; *see also Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 162 (3d Cir. 2007) (Organizations "are unable to establish standing solely on the basis of institutional interest in a legal issue."); *Abigail All. for Better Access to Devel. Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (distinguishing between "organizations that allege that their activities have been impeded from those that merely allege that their mission has been compromised"). Unspecified "frustration" is not enough.

*Second*, Plaintiffs argue that HUD's Final Rule will impact their litigation efforts by "deter[ring] victims of housing or lending discrimination from working with the Plaintiffs to bring cases based on disparate impacts," by "requir[ing] the Plaintiffs to abandon cases and claims in development," and by "undermin[ing] the Plaintiffs' ability to pursue disparate impact claims not only to address individual cases of housing discrimination, but also to change patterns of behavior." Compl. ¶¶ 28–29, 31; Bergquist Decl. ¶¶ 12, 35. This assertion, however, is unsupported by any evidence, demonstrates no drain on organizational resources, and raises claims on behalf of third parties not before this Court. Plaintiffs identify only one potential case in their attached declaration that may be impacted by the Final Rule, *see* Bergquist Decl. ¶ 47, but they do not even contend that the Rule forecloses the litigation; rather, they merely note that the Rule imposes "uncertain[t]y" and creates unnamed and vague "burdens," which has led MFHC to decide that "it would be unwise and imprudent" to extend its resources to investigate the complaint further, *id* ¶ 48.[2] Standing for the injunctive relief Plaintiffs

---

[2] The only other potential lawsuit Plaintiff MFHC mentions is a challenge to a proposed city ordinance that allegedly might "prevent[] homeowners from renting an accessory unit to anyone other than immediate family members." Bergquist Decl. ¶¶ 20–26. Plaintiffs' guesswork about the potential litigation options concerning a proposed ordinance that has not even been enacted is far too speculative to support standing.

Nor does the substance of MFHC's asserted reluctance to challenge the hypothetical ordinance under the Rule stand up to scrutiny. MFHC claims that it would be impossible to bring a disparate impact claim against the city because "plaintiffs will not be able to … plead sufficient facts to prove … the absence of a valid interest or legitimate objective." *Id.* ¶ 27; *see also id.* ¶ 28 (further

seek, however, requires establishing an injury that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). This they fail to show.

Moreover, Plaintiffs do not substantiate their allegation of diverted resources; they only posit that MFHC *would have* "committed time and resources" to investigate one potential claim further, which it has apparently chosen not to do. Bergquist Decl. ¶ 47. But that is not enough. *See La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 n.4 (9th Cir. 2010) (organization does not have "standing to sue based solely on its own decision regarding resources allocation" but rather must demonstrate that it was "*forced* to divert resources in order to avoid an injury caused by defendant's conduct.") (emphasis added); *see also Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994); *Shield Our Const. Rts. & Justice v. Hicks*, No. 09-cv-940, 2009 WL 3747199, at *5 (D. Md. Nov. 4, 2009) (organizational plaintiff's allegation of diversion of resources was insufficient to constitute an injury-in-fact because of plaintiffs' "fail[ure] to allege any specific facts" to substantiate the "bald allegation" that it had to divert resources in response to the defendant's actions).

And in alleging harm to would-be litigants who, in Plaintiffs' view, would no longer have a viable FHA claim, *see, e.g.*, Bergquist Decl. ¶ 35, Plaintiffs impermissibly attempt to assert rights of third parties without even attempting to establish the prerequisites of third-party standing. *See Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 108 (1st Cir. 2006); *see also Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004) (attorneys seeking to raise the rights of hypothetical clients without demonstrating a hindrance to the third parties' ability to protect their own interests lacked standing).

---

speculating about the implications of the Rule's pleading standards). But MFHC offers no plausible reason why it would be unable to do under the Rule, given judicial precedents that already require these elements.

Further contrary to MFHC's contention, the Final Rule's removal of the phrase "perpetuates segregated housing patterns" from § 100.500(a) does not preclude MFHC from challenging any ordinance as discriminatory because it allegedly perpetuates segregation. *See* Bergquist Decl. ¶ 25. As explained below, HUD's removal of the phrase "was part of HUD's streamlining of the regulation and is not meant to imply that perpetuation of segregation could never be a harm prohibited by disparate impact liability." 85 Fed. Reg. at 60306.

*Third*, Plaintiffs allege that the Rule affects their advocacy efforts by "thwart[ing] the Plaintiffs' ability to advocate that property owners, local land use officials, and lenders adhere to nondiscriminatory practices," Compl. ¶ 30; Merjian Decl. ¶ 17. These allegations are also entirely speculative, since Plaintiffs simply posit, without explaining why it is necessarily the case, that the Rule will prevent them from advocating for fair-housing policy changes. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 97 (2013). ("[T]he fact that" plaintiffs "may base decisions on 'conjectural or hypothetical' speculation does not give rise to the sort of 'concrete' and 'actual' injury necessary to establish Article III standing."). Further, Plaintiffs are advocacy organizations that clearly will pursue these activities regardless, and "expenditure of resources on advocacy is not a cognizable Article III injury." *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015); *see also Keep Chi. Livable v. City of Chi.*, 913 F.3d 618, 625 (7th Cir. 2019) ("contention of injury" that organization finds "it difficult to advocate and educate on home-sharing in Chicago before a court rules on … [its] challenges to the constitutionality of [challenged] Ordinance" is "little more than a 'mere interest in a problem.'"); *cf. Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 202 (D.D.C.) (explaining that an animal-rights group's "purported need for increased expenditures for advocacy and outreach" to "fight" agency rulemaking "has helped" the plaintiff because it "presumably fulfills its very purpose when it undertakes to marshal its resources to fight the good fight against agency action that it feels is improper and unwise"), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015).

*Fourth*, Plaintiffs contend that the Rule requires Plaintiffs to expend resources on education, training, and outreach. Compl. ¶¶ 32–33; *see also* Bergquist Decl. ¶ 49 (claiming that as a result of the Final Rule, MFHC "will have to modify [its] trainings for the public and re-train [its staff on the 2020 Rule, which is vague and difficult to interpret."). But, like their advocacy-impairment allegations, these allegations also fall short in establishing a true setback to Plaintiffs' activities—outreach and training always must be updated as the law changes. *See Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014) (An organization may not establish "Article III standing merely by virtue of its efforts and expense to advise others how to comport with the law, or by virtue of its efforts and expense to

change the law."); *Food & Water Watch, Inc.*, 808 F.3d at 920 ("[A]n organization does not suffer an

injury in fact where it 'expend[s] resources to educate its members and others' unless doing so

subjects the organization to 'operational costs beyond those normally expended.'") (quoting *Nat'l*

*Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1434 (D.C. Cir. 1995)). Moreover, Plaintiffs' general

and unsupported diversion-of-resources allegations stand in stark contrast to those cases where courts

have decided that a plaintiff has satisfied that prong of the organization-injury test.[3] *Compare* Compl.

¶¶ 32–33; Bergquist Decl. ¶ 49 *with, e.g., People for the Ethical Treatment of Animals, Inc.* ("*PETA*") *v. U.S.*

*Dep't of Agric.* ("*USDA*"), 797 F.3d 1087, 1096 (D.C. Cir. 2015) ("PETA estimates that, as a direct

result of the USDA's failure to regulate birds … , it has been forced to expend more than $10,000 on

staff attorney time not related to this litigation and related expenses"); *Envt. Working Grp.* ("EWG") *v.*

*U.S. Food & Drug Admin.*, 301 F. Supp. 3d 165, 171 (D.D.C. 2018) ("EWG has spent approximately

$1,365,000 in total expenses to combat" the alleged effects of an agency's inaction.). Plaintiffs' failure

to establish any cognizable injuries-in-fact stalls their claims at the threshold.

### 2. Plaintiffs Have Not Demonstrated That the Parts of the Final Rule They Challenge Have Caused Their Alleged Injuries or That This Court May Redress Their Injuries

Plaintiffs also fail to explain how the harms they allege are fairly traceable to the Final Rule or

would be redressed by this Court, falling short of the second and third element of Article III

standing. To establish standing, a plaintiff must show that the claimed injury to the plaintiff is "fairly

traceable" to the defendant's action that is the subject of the lawsuit, *see Allen v. Wright*, 468 U.S. 737,

751 (1984); *Katz*, 672 F.3d at 76–77, and must allege facts showing that "it must be 'likely,' as opposed

to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at

560–61.

Where a separate, independent government action causes the same alleged harm as a

---

[3] Housing Works' contention that the Rule will force it "to divert scarce resources to providing a home for individuals unable to exercise housing choice because of the … Rule" is similarly conjectural and unsupported by any documentation. Merjian Decl. ¶ 14.

defendant's challenged action, a plaintiff cannot establish the "necessary causal connection" between the defendant's actions and an alleged injury necessary to demonstrate standing. *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015) (per curiam); *see also Texas v. EPA*, 726 F.3d 180, 197–99 (D.C. Cir. 2013) (dismissing petitions for lack of standing because challenged regulations did not cause petitioners' claimed injuries; the injuries were caused by statute). Likewise, a plaintiff's injury cannot be redressed by a court order when two independent government actions produce the same harm and only one is challenged. *See, e.g., Delta Constr.*, 783 F.3d at 1296 ("[E]ven were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles."); *Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013) (vacating an agency's action "would not redress the State petitioners' injury" because of a second, independent source of the harm).

Here, it is the Supreme Court and the courts of appeals—not HUD—that have set forth the law regarding disparate-impact liability under the FHA; this fact is fatal to Plaintiffs' attempt to prove causation and redressability. As detailed further in Section I(C), *infra*, HUD's updates to the Rule merely incorporate the Supreme Court's opinions in *Inclusive Communities*, 576 U.S. at 539–40, and *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017), as well judicial precedent (i) requiring that any alleged impact be significant, *see, e.g., Luceus v. Rhode Island*, 923 F.3d 255, 257 (1st Cir. 2019) (Title VII) (citing *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009)); *Hallmark Devels., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1286 (11th Cir. 2006) (Title VIII); *Graoch Assoc. v. Louisville/Jefferson Cnty. Metro Human Rels. Comm.*, 508 F.3d 366, 390 (6th Cir. 2007) (Moore, J., concurring in part and dissenting in part) (Title VIII); and (ii) recognizing established defenses to disparate-impact liability claims, *see, e.g., Anderson v. City of Blue Ash*, 798 F.3d 338, 364 (6th Cir. 2015); *Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29, 30 (2d Cir. 2016), *see also Ojo v. Farmers Group, Inc.*, 600 F.3d 1205, 1209 (9th Cir. 2010). "Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party"—here, the courts that have interpreted the FHA to

require the standards that this Rule incorporates.[4] *Katz*, 672 F.3d at 71–72.

Nor do Plaintiffs articulate any injury that is fairly traceable to HUD's removal of the phrase "perpetuates segregated housing patterns" in 24 C.F.R. § 100.500(a), as the phrase does not modify any obligation under the FHA, but is rather merely a possible *result* of unlawful behavior under the disparate impact standard. *See Inclusive Cmtys.*, 576 U.S. at 539–40. Similarly, HUD's update to § 100.500(b)(3) does not mark a substantive change of law; it simply restates prohibitions elsewhere in the FHA against housing practices that have an adverse effect on members of a protected class, *see* 42 U.S.C. §§ 3604(a), 3605(a); *Anderson*, 798 F.3d at 364.

Further, Plaintiffs do not even attempt to trace any injury to HUD's alleged notice and comment violation. *See generally* Compl.; Pls.' Mem.; *cf. Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664–65 (D.C. Cir. 1996) (en banc) ("Plaintiff must show that the government act performed without the procedure in question [has] cause[d] a distinct risk to a particularized interest of the plaintiff."). Plaintiffs do not even speculate about, let alone establish, imminent harm to any concrete claim they might bring that would be negatively impacted by the Rule's "outcome prediction" defense.

Finally, Plaintiffs fail to "show that the court can fashion a remedy that will at least lessen [their] injury," *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 49 (1st Cir. 2020), since the underlying, preexisting case law regarding FHA disparate-impact liability will remain in effect. Plaintiffs thus fail to establish that this Court can redress their alleged harms by vacating the Final Rule, much less staying its effective date. *See NAACP, Boston Chapter v. Harris*, 607 F.2d 514, 519 (1st Cir. 1979) (A federal court can only redress "injury that … can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

---

[4] Plaintiffs also fail to assert any injury caused by the Rule's subsections relating to outcome prediction, or the business of insurance. *See* 24 C.F.R. § 100.500(d)(2)(i), (e). None of their allegations or claims of harm concern either subsection. *See generally* Compl.; Bergquist Decl.; Merjian Decl.

**B.  Plaintiffs' Facial Challenge to HUD's Final Rule Is Not Ripe for Adjudication But Should Be Addressed in Situation-Specific Litigation**

Plaintiffs' facial challenge is also unlikely to succeed because it is unripe, since Plaintiffs filed it in the absence of a specific application of the Final Rule. The doctrine of ripeness is "an important element of the 'case' or 'controversy' requirement" that is intended to "prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967); *see also Reddy*, 845 F.3d at 501 ("[R]ipeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

In determining whether a claim is ripe, courts look to two factors: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 148–49. The fitness inquiry has both constitutional and prudential elements. The constitutional component of the fitness prong "concerns whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts." *Reddy*, 845 F.3d at 501. "The prudential component of the fitness prong concerns whether resolution of the dispute should be postponed in the name of 'judicial restraint from unnecessary decision of constitutional issues." *Id.* The hardship prong, meanwhile, is "wholly prudential" and "concerns the harm to the parties seeking relief that would come to those parties from our 'withholding of a decision' at this time." *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 90 (1st Cir. 2013) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 59 (1st Cir. 2003)).

Here, both factors counsel strongly in favor of withholding review of Plaintiffs' facial challenge and instead waiting for application of the Final Rule in a specific case before passing judgment on it. A legal challenge to a rule or regulation is ordinarily not ripe for judicial decision "until the scope of the controversy has been reduced to more manageable proportions, and its factual

components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57–58 (1993). "The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately." *Reno*, 509 U.S. at 70 (O'Connor, J., concurring in the judgment) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)). But Plaintiffs fail to make such a showing here.

On its face, the Rule does not purport to determine whether any particular housing practice in any particular situation would give rise to liability under the FHA. *See* 85 Fed. Reg. at 60332–33. Nor does it require Plaintiffs to do anything, let alone do so immediately. *See id.* Instead, as HUD explained, the Rule merely "provides greater clarity, in the wake of *Inclusive Communities*, regarding the requirements for bringing and defending against disparate impact claims," but "does not alter the rights and protections available under the [FHA]." 85 Fed. Reg. 60297. Rather than rely on Plaintiffs' vague and unsupported allegations of potential future harm, withholding review until Plaintiffs (or someone else) articulate a specific application of the Rule that harms them would thus serve an important rationale underlying the ripeness doctrine—namely, that "courts should not render decisions absent genuine need to resolve a real dispute." *Wis. Cent., Ltd. v. Shannon,*, 539 F.3d 751, 759 (7th Cir. 2008) (quoting *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004)); *see also La. Envt. Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996). Plaintiffs' disagreement with the Rule is not enough.

Another case in this district, *Tutein v. Daley*, 116 F. Supp. 2d 205, 208 (D. Mass. 1999), is instructive. In *Tutein*, the court concluded that "[p]remature review of the Secretary's listing" of a particular location as "overfished" and the "allegedly improper criteria used to make the listing deprives [the agency] of the opportunity to revise, refine or further illuminate the criteria and thereby resolve the underlying controversy." *Id.* In this case, HUD's Final Rule does not even go so far as to categorize certain types of discriminatory housing practices under the disparate-impact liability framework. Rather, the Rule merely sets out updated criteria for determining disparate impact liability

without the benefit of being clarified or refined by its application in an actual disparate-impact FHA case. "In short, any claim of injury prior to the implementation of the final regulations is speculative." *Id.*; *see also Comprehensive Health of Planned Parenthood Great Plains v. Hawley*, 903 F.3d 750, 755 (8th Cir. 2018) (Where "there is scant evidence as to how the [regulation] actually operates. … [r]efraining from 'premature' decisions on facial challenges is a proper exercise of judicial restraint."); *see also Roman Catholic Bishop of Springfield*, 724 F.3d at 90 ("Generally, a 'mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship.'").

Notably, Plaintiffs themselves highlight the problems with reviewing their facial challenge in a vacuum rather than waiting for litigation over concrete facts. Plaintiffs pose eleven questions about how the Rule will be applied to various factual scenarios. *See* Pls.' Mem. at 12–13. These questions essentially prove the benefit of waiting to resolve any challenge to HUD's Final Rule in situation-specific litigation. These questions should be answered as the Final Rule is interpreted and applied in administrative and judicial proceedings.

Nor is the fact that Plaintiffs would simply prefer to litigate their challenge to HUD's Rule now and at a high level of generality, rather than on a case-by-case basis, sufficient to make their claims ripe for judicial resolution. *See Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1205 (D.C. Cir. 1998) (finding no hardship in withholding review even though it would be "easier and cheaper to mount a single challenge now rather than defend a series of enforcement actions"). Further, the alleged expense associated with litigating this issue case-by-case is also insufficient to overcome the strong grounds to withhold review. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998) (holding that "litigation cost-saving" does not "justify review in a case that would otherwise be unripe"). Rather, Plaintiffs should wait and see what the actual impact, if any, of the Rule is on their specific activities before seeking this Court's attention.

**C.  Plaintiffs Are Unlikely to Succeed on their Claim that HUD's Final Rule Violates the APA**

Plaintiffs are not likely to succeed on the merits of their facial challenge to HUD's Final Rule

under the APA because they cannot show that the Rule is contrary to law, arbitrary and capricious, or in excess of HUD's rulemaking authority. To prevail on a facial challenge to a regulation, plaintiffs "must establish that no set of circumstances exists under which the [regulation] would be valid." *Reno v. Flores*, 507 U.S. 292, 301 (1993) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (alteration in original). Plaintiffs make no such showing.

### 1. HUD's Final Rule Is in Accord with the Statute and Judicial Precedent

Plaintiffs cannot show that HUD's Final Rule is contrary to law. This Court's review is limited to deciding whether HUD's Final Rule is a permissible interpretation of §§ 3604(a) and 3605(a) under *Chevron*, *see United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) ("[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when … Congress delegated authority to the agency generally to make rules carrying the force of law, and … the agency interpretation claiming deference was promulgated in the exercise of that authority."). The FHA grants HUD broad authority to issue rules to interpret and enforce the FHA. *See* 42 U.S.C. § 3614a. Sections 3604(a) and 3605(a), moreover, are "sufficiently pliable that [their] text can bear the Secretary's construction." *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 300 (7th Cir. 1992) ("Courts should respect a plausible construction by an agency to which Congress has delegated the power to make substantive rules."); *see also Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1359 (6th Cir. 1995).[5] As a result, HUD has authority to issue rules after reviewing "the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011).

Plaintiffs first contend that HUD's removal of the phrase "segregated housing patterns" from 24 C.F.R. § 100.500(a) is contrary to law. *See* Pls.' Mem. at 8. But Plaintiffs do not even attempt to show that the exclusion of this phrase is actually contrary to any established case law. *See id.* To the contrary, as HUD explained in its Final Rule, the phrase "perpetuates segregated housing patterns"

---

[5] Nor should Plaintiffs disagree. Otherwise HUD's 2013 Rule would be similarly invalid.

does not modify any obligation under the FHA, and HUD only removed it for purposes of streamlining the text of the subsection. 85 Fed. Reg. 60306. As HUD explained, under the Final Rule, a plaintiff can prove liability under § 3604(a) of the FHA by showing that a policy or practice "has led to the perpetuation of segregation, which has a discriminatory effect on members of a protected class." *Id.* In other words, "perpetuation of segregation" is a possible harmful *result* of unlawful behavior under the disparate impact standard. *Id.*; *accord Inclusive Cmtys*, 576 U.S. at 539–40. In any event, HUD's decision about whether to include this term for illustrative purposes is a policy choice, and "policy choices are for the agency, not the court, to make. Even if a reviewing court disagrees with the agency's conclusions, it cannot substitute its judgment for that of the agency." *Assoc. Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997) (citing *Overton Park*, 401 U.S. at 416; *Maine v. Kreps*, 563 F.2d 1052, 1055 (1st Cir. 1977)).

Second, Plaintiffs contend that HUD's incorporation in § 100.500(b) of judicially established pleading requirements for §§ 3604(a) and 3605(a) claims is contrary to law because it violates HUD's duty under 42 U.S.C. § 3608(d) and (e)(5). *See* Pls.' Mem. at 9–10. Plaintiffs, however, do not even try to explain how incorporating judicial precedent into a HUD regulation could violate § 3608(d) and (e)(5). *See id.* Nor could they. Section 3608(d) and (e)(5) are broad statutory mandates. They provide for HUD to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter." 42 U.S.C. §§ 3608(d), (e)(5). They do not require HUD to take any particular action or achieve a particular result. *Accord Inclusive Cmtys.*, 576 U.S. at 540 ("The FHA is not an instrument to force housing authorities to reorder their priorities."); *id.* at 542 ("The FHA does not decree a particular vision of urban development."); *Darst-Webbe Tenant Ass'n v. St. Louis Hous. Auth.*, 417 F.3d 898, 907 (8th Cir. 2005); *McGrath v. HUD*, 722 F. Supp. 902, 907 (D. Mass. 1989). Nothing in §§ 3608(d) and (e)(5) can reasonably read to require HUD to interpret §§ 3604(a) and 3605(a) in the manner preferred by Plaintiffs. Rather, the relevant question is whether HUD has offered a permissible construction of §§ 3604(a) and 3605(a)—which it has.

Even the briefest review of § 100.500(b) shows that each subsection is firmly grounded in

binding and persuasive authority. *Accord Kasten*, 563 U.S. at 7. First, § 100.500(b)(1)'s adoption of "arbitrary, artificial, and unnecessary" standard simply incorporates the Supreme Court's definitive interpretation under §§ 3604(a) and 3605(a) that the challenged policy must be an "artificial, arbitrary, and unnecessary barrier" to fair housing. *See Inclusive Cmtys.*, 576 U.S. at 540, 543; *see also Ellis v. City of Minneapolis*, 860 F.3d 1106, 1112–14 (8th Cir. 2017). Similarly, HUD's incorporation of the "robust causal link" standard into § 100.500(b)(2) is also entirely consistent with *Inclusive Communities* and other judicial precedent. *See* 576 U.S. at 541–42; *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989); *Frederick*, 649 F. App'x at 30. Likewise, § 100.400(b)(3) simply restates §§ 3604(a) and 3605(a)'s prohibitions against housing practices that have an adverse effect on members of a protected class. *See* 42 U.S.C. §§ 3604(a), 3605(a); *Anderson*, 798 F.3d at 364. Further, § 100.50(b)(4)'s pleading requirement that any alleged impact is significant accords with longstanding judicial precedent for any claim based on an alleged statistical disparity. *See, e.g., Hallmark Devels.*, 466 F.3d at 1286; *Graoch Assoc.*, 508 F.3d at 390. Finally, § 100.500(b)(5) incorporates the Supreme Court's definitive interpretation of the proximate cause requirement under the FHA that there be "some direct relation between the injury asserted and the injurious conduct alleged." *Bank of Am. Corp.*, 137 S. Ct. at 1306. Thus, § 100.500(b) accords with discriminatory effects law. *Accord, e.g., Ry. Labor Execs.' Ass'n v. ICC*, 914 F.2d 276, 280–81 (D.C. Cir. 1990) (upholding agency's interpretation of statute under *Chevron* as permissible where, *inter alia*, its interpretation was "firmly supported by previous decisions in this and other circuits").

Even if there is some difference between the exact words and phrases in these judicial precedents and HUD's terms in § 100.500(b), HUD's interpretation of any ambiguities in the exact meaning of a statutory term is entitled to deference. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) ("Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction."). Indeed, "the resolution of ambiguity" is "often more a question of policy than of law." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696 (1991). And where, as here, Congress, "through express delegation or the introduction of an interpretive gap in

the statutory structure, has delegated policy-making authority to an administrative agency," the extent of judicial review of the agency's policy determinations is especially limited. *Id.* (citing *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990); *Chevron, USA v. Nat. Res. Def. Council*, 467 U.S. 837, 864–66 (1984)). As a result, HUD "may, consistent with [a] court's holding, choose a different construction, since the agency remains the authoritative interpreter (within the limits of reason) of such statutes." *Brand X Internet Servs.*, 545 U.S. at 983. Thus, there is no merit to the claim that § 100.500(b) is contrary to law.

### 3.  HUD's Final Rule Has a Rational Basis and Is Therefore Neither Arbitrary nor Capricious

Plaintiffs cannot show that HUD's Final Rule is arbitrary and capricious. In assessing Plaintiffs' APA challenge, this Court's "narrow" role is to assess whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). To succeed in their challenge, moreover, Plaintiffs must show that there is no "rational connection between the facts found and the choice made." *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

First, because HUD's Final Rule permissibly incorporates judicial pleading requirements for a disparate impact claim, *see* Section I(C)(1), *supra*, Plaintiffs cannot credibly show that § 100.500(b) lacks a rational connection to HUD's findings. Nor have Plaintiffs shown that the burdens of proof set out in § 100.500(c) lack a rational basis. It was rational for HUD to provide in § 100.500(c)(1) that a defendant may show that its policy is not the actual cause of a disparate impact when its discretion is materially limited by Federal, State or local law, or by a binding or controlling court, arbitral, regulatory, administrative order, or administrative requirement. *Compare* 24 C.F.R. § 100.500(c)(1) *with, e.g., Ojo*, 600 F.3d at 1209 (FHA can be reverse-preempted by the McCarran–Ferguson Act). HUD, moreover, provided a sufficient explanation for the choice it made. *See* 85 Fed. Reg. at 60316–18. Similarly, it was rational for HUD to modify the standard in § 100.500(c)(2) for a defendant to rebut a plaintiff's showing to incorporate the Supreme Court's 2015 interpretation of the FHA's requirements, and for HUD to conclude that *Wards Cove* remains controlling authority in the Title VII

context (and which numerous courts have held governs the pleading standing for Title VIII). *See, e.g.*, *Inclusive Cmtys.*, 576 U.S. at 542 (incorporating the business necessity defense in *Wards Cove*, 490 U.S. at 644); 85 Fed. Reg. 60320.

Contrary to Plaintiffs' contention, moreover, HUD offered a sufficient explanation for its updates to its 2013 Rule. "Agency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework." *Brand X Internet Servs.*, 545 U.S. at 981. Rather, so long as "the agency adequately explains the reasons for a reversal of policy, 'change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency.'" *Id.* HUD's 43-page, three-column preamble to its two-page Final Rule provides more than sufficient explanation for HUD's choices. *See* 85 Fed. Reg. at 60288-332, 60332–33. As a result, Plaintiffs cannot sustain their APA claim based on the mere fact that HUD changed its disparate impact rule, primarily in response to the *Inclusive Communities* opinion, in a way they dislike.

### 4. HUD's Final Rule Comports with the APA's Notice and Comment Requirements

Plaintiffs cannot succeed on their claim that § 100.500(d)(2)(i) violates the APA's notice and comment requirements. First, as shown above, Plaintiffs lack standing to pursue this claim because they have failed to allege an injury caused by the inclusion of this subsection in the Rule. *See* Section I(A), *supra*. Second, § 100.500(d)(2)(i) is a logical outgrowth of HUD's proposed rule. *City of Taunton v. EPA*, 895 F.3d 120, 131 n.10 (1st Cir. 2018) (An agency "can make even substantial changes from the proposed version [of a rule], as long as the final changes are in character with the original scheme and a logical outgrowth of the notice and comment.") (alterations in the original); *Ponce Paramedical Coll., Inc. v. U.S. Dep't of Educ.*, 858 F. Supp. 303, 313 (D.P.R. 1994) ("A final rule may differ from the proposed rule when the comments demonstrate the need for a change.") (quoting *Edison Elec. Inst. v. OSHA*, 849 F.2d 611, 621 (D.C. Cir. 1988)). Section 100.500(c)(2) of the proposed rule suggested different methods by which a defendant could show that a challenged algorithm did not cause a disparate impact. In response to comments, HUD determined that its proposed algorithm defenses

"would likely have been unnecessarily broad in their effect," and narrowed its Final Rule accordingly. 85 Fed. Reg. at 60290. As HUD explained, § 100.500(d)(2)(i) is a narrower alternative that "would provide some defendants the opportunity to justify predictive models." *Id.*; *cf. Ponce Paramedical Coll.*, 858 F. Supp. at 313. Thus, subsection (d)(2)(i) is a logical outgrowth of subsection (c)(2) because a defendant's practices that predict outcomes, such as accurate predictive risk analysis, is an example of the algorithmic defense proposed in subsection (c)(2) and is "in character with the original scheme." *Nat. Res. Def. Council v. EPA*, 824 F.2d 1258, 1283 (1st Cir. 1987); *see also Assoc. Fisheries of Maine, Inc. v. Evans*, 350 F. Supp. 2d 247, 254 (D. Me. 2004). In any event, even if this Court were to determine that HUD's final decision on this point is "'a decision of less than ideal clarity,'" it must be upheld so long as "'the agency's path may reasonably be discerned.'" *United Source One, Inc. v. U.S. Dep't of Agric., Food Safety & Inspection Serv.*, 865 F.3d 710, 717 (D.C. Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

Finally, even if Plaintiffs were likely to succeed on this claim, the rest of HUD's Final Rule should not also fall, as § 100.500 contains a severability clause. *See* 24 C.F.R. § 100.500(g). In determining whether one part of a regulation is severable, a court should ascertain the "intent of the agency and … whether the remainder of the regulation could function sensibly without the stricken provision." *MD/DC/DE Broad. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001); *accord Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999). In this case, § 100.500's severability clause makes the agency's intentions with respect to severability clear. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987). Thus, unless Plaintiffs marshal "strong evidence" to the contrary, any "objectionable provision[s]" should be "excised" from the remaining provisions. *Id.* Here, Plaintiffs marshal no such evidence, *see* Pls.' Mem. at 13–14, and a review of the remainder of § 100.500 makes clear that it could easily function in the absence of subsection (d)(2)(i). Alternatively, this Court could remand this subsection without vacating. It is in the reviewing court's sound discretion to remand a rule to an agency to mend procedural defects without overturning it in its entirety. *See Cent. Me. Power Co. v. Fed. Energy Regulatory Comm'n*, 252 F.3d 34, 48 (1st Cir. 2001) (declining to enjoin regulation while

case remanded to agency for further explanation); *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002) (remanding rule that violated notice and comment requirements without vacating it because of chaotic practical consequences of vacating); *see also, e.g.*, *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 566 F. Supp. 2d 995, 1009 (D.S.D. 2008) (granting a preliminary injunction on an APA notice-and-comment claim by remanding the case to the agency to provide notice and comment on a particular portion of the rule but noting that "no provisions of the … Rule will be vacated.").

### 5. Plaintiffs Have Waived Their Right to Pursue Their Claim That the Final Rule Exceeds the Agency's Rulemaking Authority, Which In Any Event Is Meritless

Plaintiffs have waived their ability to pursue their argument that HUD's Final Rule exceeds the agency's statutory rulemaking authority because Plaintiffs did not raise it in their comments submitted to HUD. In any event, HUD's Final Rule falls well within its rulemaking authority.

The administrative waiver doctrine, commonly referred to as issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved. S*ee United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); *Unemployment Comp. Comm'n v. Aragon*, 329 U.S. 143, 155 (1946); *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004) (per curiam); *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 461–62 (6th Cir. 2004). Moreover, "[t]here is no exception for lawsuits alleging that an agency has exceeded its statutory authority." *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 7 (D.C. Cir. 2011).

In this case, Plaintiff MHFC submitted two comments, one in response to HUD's advanced notice of proposed rulemaking and one in response to HUD's proposed rule. *See* MFHC, Comment on Reconsideration of HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, Docket No. FR-6111-A-01 (Aug. 20, 2018) ("2018 Comment") [attached as Ex. A]; MFHC, Comments in Response to HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, Docket No. FR-6111-P-02 (Oct. 18, 2019) ("2019 Comment") [attached as Ex. B.].[6]

---

[6] Defendants have not located any comment submitted by Plaintiff Housing Works, Inc.

27

MFHC's 2018 Comment urged HUD not to provide the insurance industry with a safe harbor and to not disturb the 2013 Rule's "burden-shifting approach." 2018 Comment at 2–3. MFHC's 2019 Comment stated that HUD's proposed rule "would create substantial additional hurdles for survivors and make it substantially hard to challenge … unjust policies and practices." 2019 Comment at 2. Neither claimed that the proposed rule exceeded HUD's statutory rulemaking authority. *See generally* 2018 Comment, 2019 Comment. Count IV of the Complaint nevertheless alleges that the Rule exceeds HUD's authority. *See* Compl., Count IV, ¶¶ 122–27. Plaintiffs' failure to raise this argument before the agency waives their ability to pursue it now. *See Lake Carriers' Ass'n v. EPA*, 652 F.3d at 7.[7]

Even if this Court were to consider Plaintiffs' claims in Count IV, it should find that HUD's Final Rule falls within the agency's statutory rulemaking authority. As shown above, §§ 3608 and 3614a grants HUD broad authority to issue rules to enforce the FHA, *see* 42 U.S.C. §§ 3608, 3614a, and § 3604 "is sufficiently pliable that its text can bear the Secretary's construction," *Am. Fam. Mut. Ins. Co.*, 978 F.2d at 300; *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d at 1351. HUD's Final Rule incorporates judicial pleading standards or otherwise falls within HUD's scope of authority to interpret the FHA. *See* Section I(C)(1), *supra*. Plaintiffs are thus unlikely to succeed on Count IV.

## II.  PLAINTIFFS FAIL TO ESTABLISH IRREPARABLE HARM

Plaintiffs fail to demonstrate that they will suffer irreparable injury absent preliminary relief. Irreparable harm requires "something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). But that is all Plaintiffs offer here. In supporting their assertion of irreparable harm, Plaintiffs rehash their standing claims, *see* Pls.' Mem. at 15–16, and offer their own lengthy but ultimately conclusory, unsupported, and speculative declarations. Plaintiffs also offer declarations from numerous third-party organizations asserting similarly conjectural and non-cognizable harms to

---

[7] Plaintiffs have also waived their right to challenge whether HUD's Final Rule should be applied to retroactively, or to pending claims. *See* Compl. ¶¶ 125–26. In any event, these issues are not ripe for review in Plaintiffs' facial challenge, but should be addressed in situation-specific litigation.

argue that the Rule "will undermine the ability of all housing organizations to help victims of housing and lending discrimination vindicate their rights," *id.* at 17; *see also id.* at 16 (citing declarations).[8]

Plaintiffs' speculative and ill-supported allegations of potential future harm from the Rule are not even enough to establish standing, *see* Section 1(A), *supra*; for that reason, they fall well short of demonstrating irreparable harm. *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) ("[T]o show irreparable harm '[a] plaintiff must do more than merely allege … harm sufficient to establish standing.'") (quoting *Associated Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991))); *see also Neighborhood Ass'n of the Back Bay, Inc. v. Fed. Transit Admin.*, 407 F. Supp. 2d 323, 343 (D. Mass. 2005) (denying plaintiff's motion for preliminary relief based on its failure to present any evidence to substantiate its claim), *aff'd*, 463 F.3d 50 (1st Cir. 2006); *see* Bergquist Decl. ¶¶ 12–49; Merjian Decl. ¶¶ 9–17.

Nor are the third-party declarations, asserting potential future harm to other organizations, of any help in establishing harm to Plaintiffs. *CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 622 (1st Cir. 1995) ("[T]he issuance of a preliminary injunction requires a showing of irreparable harm to *the movant* rather than to one or more third parties.") (emphasis in original); *see also City of Lowell v. Enel N. Am., Inc.*, 705 F. Supp. 2d 116, 120 (D. Mass. 2010).

Moreover, "[i]t would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm … . [T]he irreparable harm considered by the court must be caused by the conduct in dispute and remedied by the relief sought." *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011). As explained *supra*, the Rule incorporates existing case law regarding disparate-impact liability. Thus, preliminary injunctive relief may stay the Rule, but it would not undo the existing jurisprudence that already establishes the pleading and proof standards to which Plaintiffs object. *Id.*

In light of the serious standing defects in Plaintiffs' case, this suit should not be sped up for

---

[8] Plaintiffs cite thirteen declarations from other organizations but only attach six to their preliminary-injunction motion. *See* ECF Nos. 12-3—12-8.

Plaintiffs to receive close to ultimate relief in this case. Instead, it should proceed in the ordinary course, and this Court should conclude that it lacks jurisdiction over Plaintiffs' facial challenge.

## III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH AGAINST PRELIMINARY RELIEF

The balance of equities and public interest also weigh in Defendants' favor. These final two factors of the preliminary injunction analysis merge where relief is sought from the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). Plaintiffs argue that permitting the Final Rule to take effect before this Court issues a final judgment in this lawsuit would create "confusion" if the Final Rule is later overturned. Pls.' Mem. at 18. By that logic, any forthcoming action by a defendant should be immediately halted whenever a plaintiff files a lawsuit to challenge it. But that is not the standard under § 705 for granting a stay.

Plaintiffs go on to claim that "[e]ven if the Court ultimately finds that the 2020 Rule is valid, the limited stay … sought by Plaintiffs will not harm the public interest in any significant way." Pls.' Mem. at 18. But that is untrue. "There is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop and enforce." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008). Here, Congress has provided authority to the Secretary of HUD to administer the FHA, 42 U.S.C. § 3608, and to "make rules … to carry out" the important aims of the statute, 42 U.S.C. § 3614a. In light of Plaintiffs' failure to show a likelihood of success on the merits or any irreparable harm, the agency's considered judgment should not be so cavalierly cast aside without full and final consideration of the merits.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for a stay of the effective date of HUD's rule under § 705 of the APA.

Dated: October 14, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DANE M. NARODE
Acting Associate General Counsel

LESLEY FARBY
Assistant Branch Director

BATINA WILLS WASHINGTON
Assistant General Counsel, Assisted
Housing and Civil Rights

s/ James D. Todd, Jr.
JAMES D. TODD, JR.
VINITA B. ANDRAPALLIYAL

YOLANDA A. BRUCE
Trial Attorney

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch

STEPHEN A. COBB
Trial Attorney

Ben Franklin Station
P.O. Box 883
Washington DC 20044

U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT

(202) 514-3378
(202) 305-0845

Of counsel

james.todd@usdoj.gov
vinita.b.andrapalliyal@usdoj.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b)(2)(E), Defendants effected service of this filing on all other parties to these actions by filing it with the Court's electronic filing system.

s/ James D. Todd Jr.
JAMES D. TODD, JR.