# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER and HOUSING WORKS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and BEN CARSON, Secretary of the Department of Housing and Urban Development, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 3:20-cv-11765-MGM |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO POSTPONE THE EFFECTIVE DATE OF HUD'S UNLAWFUL NEW RULE**

Plaintiffs Massachusetts Fair Housing Center ("MFHC") and Housing Works, Inc. ("Housing Works") submit this reply memorandum in support of their motion under 5 U.S.C. § 705 to postpone the effective date of a new, unlawful rule issued by defendant Department of Housing and Urban Development ("HUD"), *Implementation of the Fair Housing Act's Disparate Impact Standard*, 85 Fed. Reg. 50288 (September 24, 2020) (the "2020 Rule") (ECF #12) ("Pl. Mem."). In their Brief in Opposition to Plaintiffs' Motion (ECF #24) ("Defs.' Opp."), Defendants raise a variety of unpersuasive arguments why the Court should deny the preliminary relief Plaintiffs seek. In this reply, Plaintiffs address a number of HUD's misconceived assertions and show: (1) Plaintiffs have organizational standing to maintain this action, and will suffer irreparable harm if the 2020 Rule is permitted to take effect, because HUD's new rule undermines their mission and will cause a significant diversion of their limited resources; (2) the new Rule does not simply codify intervening changes in the law that have emerged since HUD

1

promulgated its 2013 Rule and, therefore, Plaintiffs' injuries are traceable to the 2020 Rule and can be redressed by preventing the new rule from taking effect; (3) there is no need to wait for "situation-specific" litigation to resolve whether the 2020 Rule is lawful; (4) HUD has not adequately justified its abrupt change in its disparate impact rules; and (5) Plaintiffs have standing to challenge HUD's failure to follow required notice and comment procedures. Plaintiffs otherwise continue to rely on the arguments they offered in their opening brief.

## Argument

### I. PLAINTIFFS HAVE SHOWN SUFFICIENT INJURY TO ESTABLISH BOTH STANDING AND IRREPARABLE HARM.

Plaintiffs acknowledge that in order to prevail on their motion, they must demonstrate both a substantial likelihood of standing, by pointing to an injury-in-fact that has a causal connection to HUD's new rule and that could be redressed by a favorable decision on the merits. *Council of Ins. Agents & Brokers v. Juarbe-Jimenez*, 443 F.3d 103, 107-08 (1st Cir. 2003). They also acknowledge that in order to obtain the preliminary relief they seek, they must show a likelihood of irreparable harm if the 2020 Rule is allowed to take effect. *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020). At the early stages of litigation, such as here, a plaintiff's obligation is only to show a "substantial likelihood" of standing. *Northwest Immigrant Rights Project, et al. v. U.S.C.I.S.*, 2020 WL 5995206, at *5 (D.D.C. Oct. 8, 2020) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). Further, as this Court recently explained, "irreparable harm and likelihood of success should be measured on 'a sliding scale ... such that [t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.'" *Baillargeon v. CSX Transportation Corp.*, No. CV 19-30135-MGM, 2020 WL 2797968, at *4 (D. Mass. May 29, 2020), quoting *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 42 – 43 (1st Cir. 2010) (internal citations and

2

quotation marks omitted); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("[A]n attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem.").

Contrary to Defendants' assertions, both MHFC and Housing Works have more than adequately demonstrated that they have organizational standing to bring this challenge to HUD's new rule under the Administrative Procedures Act.[1] Agency action that frustrates an organization's mission and causes an organization to divert resources to counteract the agency action is sufficient to demonstrate injury for purposes of both standing and irreparable harm. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding organizational injury based on an "injury to the organization's activities" followed by "the consequent drain on the organization's resources"); *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020) (DHS rule stripping asylum eligibility from certain migrants injured legal services organizations, for both standing and irreparable harm purposes, by causing organizations to change core missions and divert significant resources to respond to rule); *Whitman-Walker Clinic, Inc. v. H.H.S.*, 2020 WL 5232076, at *38 (D.D.C. Sept. 2, 2020) (same regarding HHS rule reversing prohibitions on discrimination); *Make the Road New York v. Pompeo*, 2020 WL 4350731, at *21 (S.D.N.Y. Jul. 29, 2020) (same regarding State Department rule denying lawful permanent resident status to certain class of immigrants).

Courts have repeatedly accepted as adequate to establish standing at this early stage of litigation declarations from organizational plaintiffs that agency rules designed to make serving their clients' needs more difficult are likely to cause concrete injury-in-fact to an organization by

---

[1]  Neither MHFC nor Housing Works asserts associational standing.

3

undermining their missions and causing them to divert resources.  The courts have not required the particularized showings Defendants claim are needed.  *See East Bay Sanctuary*, 950 F.3d at 1266 (immigrant rights organizations had standing to challenge DHS rule based on likely deterrence of potential asylum applicants and increased time and costs of assisting migrants obtain lawful permanent residence); *Whitman-Walker Clinic*, 2020 WL 5232076, at *10-11 (health-care facilities had standing to challenge HHS reversal of rule prohibiting discrimination based on anticipated difficulties providing care to LGBTQ+ patients and associated costs of more intensive and difficult treatment); *see also Common Cause Indiana v. Lawson*, 937 F.3d 944 (7th Cir. 2019) (voting rights organizations had standing to challenge Indiana Secretary of State's amendment to state voter registration laws based on expectation that amendment would detract from affirmative voter registration programming and organizations would be forced to spend resources "cleaning up the [amendment's] mess").

      Following these precedents, Plaintiffs have more than adequately demonstrated a substantial likelihood that they will be found to have organizational standing.[2]  Plaintiff MFHC is Massachusetts' oldest private organization devoted solely to fair housing advocacy, Bergquist Decl. ¶ 4, and is dedicated to eliminating systemic housing discrimination and creating inclusive communities in Massachusetts.  *Id.* ¶ 41.  MFHC employs a multi-faced approach to achieve its mission, including vigorously enforcing fair housing laws and conducting extensive public education and outreach.  *Id.* ¶ 5.  MFHC maintains an active legal enforcement program, testing, investigating, and prosecuting claims of housing discrimination.  *Id.* ¶ 7-8.  Housing Works is a non-profit corporation serving a community of people living with and affected by HIV/AIDS whose mission is to end the dual crises of homelessness and AIDS.  Merjian Decl. ¶ 4.  Housing

---

[2]    Plaintiffs do not need to show that both MHFC and Housing Works have standing; it is sufficient to show that at least one plaintiff has standing.  *Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007).

Works provides advocacy and comprehensive services to achieve its mission, including legal services to help clients obtain housing and challenge discriminatory housing policies and practices.  *Id*. ¶ 5, 7-8.  In addition, Housing Works operates twelve residences to provide housing to individuals at risk of homelessness or HIV/AIDS.  *Id.* ¶ 6.

Plaintiffs have far more than what Defendants call a "mere interest in a problem."  Defs.' Opp. at 11-12.  MFHC is an active enforcer of fair housing laws.  Bergquist Decl. ¶ 5, 7-10.  In recognition of this work, HUD has provided grants to MFHC under 42 U.S.C. § 3616a, HUD's Fair Housing Initiatives Program, so that MFHC can continue to carry out testing and enforcement activities to prevent or eliminate discriminatory housing practices.  *Id.* ¶ 45.  When MFHC has discovered discriminatory housing practices, HUD has recognized MFHC's standing to challenge those practices under the FHA as an "aggrieved party," including as recently as last month.  *Id.* ¶¶ 9-10.  Likewise, Housing Works has also taken an active role in enforcing fair housing laws; Housing Works has been at the forefront of challenging source of income and disability discrimination in New York City's housing market, and has secured seminal legal decisions and successfully settled numerous cases by litigating disparate impact claims under the FHA.  Merjian Decl. ¶¶ 7-8; Merjian Suppl. Decl. ¶ 6.  Additionally, Housing Works is itself a housing provider, providing temporary and permanent housing for clients who are otherwise unable to obtain stable housing due to discriminatory policies and practices.  Merjian Decl. ¶ 6.  Thus, the problem of fair housing, and the ability to utilize disparate impact liability as a tool for combatting housing discrimination, is at the core of Plaintiffs' missions and the work they do to achieve their fair housing objectives.

The heightened thresholds and burdens of the 2020 Rule will make it more difficult, if not impossible, for Plaintiffs to enforce fair housing laws by bringing disparate impact claims

5

and challenging neutral policies that perpetuate segregation or disproportionately harm individuals in a protected class. Bergquist Decl. ¶¶ 26-28; Bergquist Suppl. Decl. ¶ 6; Merjian Decl. ¶ 9-10; Merjian Suppl. Decl. ¶ 6. Plaintiffs have set forth these harms in detailed declarations filed with their Motion and supplemental declarations submitted with this Reply. For MFHC, the burdens of the 2020 Rule will cause MFHC to cease investigation, and prevent future prosecution, of potential claims of disparate impact. Bergquist Decl. ¶¶ 24-27. Indeed, the 2020 Rule has already caused MFHC to put one such investigation on hold while their request for preliminary relief in this case is pending, *Id.* ¶¶ 47-48, and looks to set back and make more difficult existing partnerships and projects, which MFHC had already expended significant time and resources on. Bergquist Suppl. Dec. ¶¶ 8-11. Without the ready availability of disparate impact claims, MFHC's ability to engage in housing discrimination enforcement, including as a grantee under HUD's Fair Housing Initiative Program, will be gravely limited. Bergquist Decl. ¶ 45. MFHC's ability to negotiate with and persuade landlords, property managers, and other potential defendants will also be undercut by the 2020 Rule, as it increases the burdens on victims seeking redress from discrimination while lowering the burdens on perpetuators of discrimination. Bergquist Suppl. Decl. ¶ 12. MFHC will also have to change its strategic plan to end systemic housing discrimination and create inclusive communities – a plan specifically enabled by the availability of disparate impact liability as conceived under HUD's 2003 disparate impact rule. Bergquist Decl. ¶¶ 41-43; Bergquist Suppl. Decl. ¶ 5. For Housing Works, the inability to enforce fair housing laws through disparate impact claims will undermine their overarching efforts to end homelessness and empower clients to exercise housing choice and secure dignified housing – the consequences of which will ripple out and exacerbate human and fiscal costs for those who are disabled or living with maladies such as HIV/AIDS when they

are subsequently at increased risk of hospitalization, emergency room visits, and transmission of HIV.  Merjian Decl. ¶ 13.  Thus, the 2020 Rule directly conflicts with Plaintiffs' missions because it makes their work substantially more difficult.

The 2020 Rule will also require Plaintiffs to divert resources to respond to fallout of the 2020 Rule.  For example, if victims of housing and lending discrimination are unable to seek redress for valid and consequential discrimination claims, the jettisoning of such claims will lead to an increase in demand on Housing Works for both emergency and permanent housing, which is already in high demand, especially during the COVID-19 pandemic.  Merjian Decl. ¶ 14; Merjian Suppl. Decl. ¶¶ 7-8.  The increasing urgency of clients' non-legal needs will cause Housing Works to expend resources that it otherwise would not have, and at the expense of other programming, including legal programs.  *Id.* ¶ 8..

The 2020 Rule will likewise require Plaintiffs to divert resources to manage the new burdens and hurdles imposed by the 2020 Rule.  Because the 2020 Rule entirely rewrites the existing framework and understanding of disparate impact liability, the 2020 Rule renders MFHC's existing training and education materials and programming on disparate impact outdated and misleading.  *See* Bergquist Suppl. Decl. ¶ 15.  As a result, MFHC will have to divert staff time and resources, which are already under considerable pressure due to the COVID-19 pandemic, to re-train staff on the 2020 Rule and overhaul prior education, outreaching, and training materials for the public.  Bergquist Decl. ¶ 49; Bergquist Suppl. Decl. ¶¶ 15-16.  The resources in staff time, opportunity cost, and money required to re-learn and re-teach the 2020 Rule go beyond a routine update of the law and operational costs, as Defendants wrongly attempt to characterize, and will undoubtedly require costs beyond those normally expended, given the seismic shift of the 2020 Rule.  Def. Opp. at pp. 14-15; *see* Bergquist Suppl.

7

Decl. ¶¶ 15-16; *Northwest Immigrant Rights Project,* 2020 WL 5995206, at *8 (costs to change manner in which organization assisted clients in completing fee waiver requests and to screen requests for services were not "ordinary program costs").

Additionally, the heightened requirements of the 2020 Rule will make disparate impact cases costlier and more involved. Because the 2020 Rule requires victims to seek an enormous amount of information to merely plead a case, without the benefit of discovery, victims and Plaintiffs will have to spend more time and resources investigating and pleading sufficient facts in order to plead the requisite five elements required for a disparate impact claim under the 2020 Rule. Bergquist Suppl. Decl. ¶¶ 6-7; Merjian Suppl. Decl. ¶¶ 9-10; *see* Bergquist Decl. ¶ 28; Merjian Decl. ¶ 14. The increased cost of pursuing individual disparate impact cases will necessarily require Plaintiffs to draw on resources otherwise allocated for other programming. Bergquist Suppl. Decl. ¶¶ 6-7, 13; Merjian Suppl. Decl. ¶¶ 9-10. As disparate impact cases become costlier, Plaintiffs will have to conduct more detailed screenings in their intake process in order to ascertain which potential claims have a higher likelihood of success and should be investigated and prosecuted – a process and requirement that again necessitates diversion of staff time and resources from other programming. Bergquist Decl. ¶ 46; Bergquist Suppl Decl. ¶ 17; Merjian Decl. ¶ 9. The consequence of the imposition of additional costs at each stage of a potential disparate impact case will prevent Plaintiffs from assisting as many clients as they otherwise would have been able to, under HUD's prior disparate impact rule. Bergquist Suppl. Decl. ¶¶ 7, 14, 17-18; Merjian Suppl. Decl. ¶ 11.

Plaintiffs' injuries are far from conjectural or hypothetical, as Defendants claim, Defs.' Opp. at pp. 12-13, and are already happening or certainly impending. The 2020 Rule has already caused at MFHC to stop investigating and developing a potential claim of disparate impact

8

discrimination. Bergquist Decl. ¶ 24-27. The confusion caused by HUD's abandonment of its well-understood 2013 Rule and its adopting of its new, bewildering 2020 Rule has already caused both MHFC and Housing Works to spend more time and effort to address the uncertainties and challenges created by the 2020 Rule. *See* Bergquist Suppl. Decl. ¶¶ 8-11; Merjian Suppl. Decl. ¶¶ 7-8  Given the strapped resources of these organizations in the midst of a pandemic, these adverse impacts are more than sufficient to show injury for purposes of standing and irreparable harm for purposes of relief under § 705. *See Common Cause Indiana*, 937 F.3d at 952 (culture of voter confusion caused by amendment to state voter registration laws and expected increase in resources devoted to alleviate potentially harmful effects of government action "is enough to allege injury in fact"). Even if MHFC's injury were limited to the loss of one potential client or case that MFHC would have had, but for the 2020 Rule – and, in fact, MHFC's injury extends well beyond that – that would be enough to establish concrete injury. *See East Bay Sanctuary Covenant*, 950 F.3d at 1267 ("[O]ne less client that [Plaintiff-Organization] may have had but-for the Rule's issuance is enough. In other words, plaintiffs who suffer concrete, redressable harms that amount to pennies are still entitled to relief.").[3] *Northwest Immigrant Rights Project*, 2020 WL 599207, at *7-8, decided just last week by the United States District Court for the District of Columbia, is instructive. There, the Court concluded that immigrant rights organizations had standing to challenge a new DHS rule altering the fees charged for services, including the imposition of an application fee for first-time asylum

---

[3] Plaintiffs' fears that the challenged Rule will undermine disparate impact claims are more than well-founded. But even if those fears were *unfounded*, their standing would still be established. *See Whitman-Walker Clinic*, 2020 WL 5232076 at *12 (fear of injury is sufficient to show harm for standing, not that the injury will actually occur); *see also State of New York v. Department of Homeland Security*, --F.Supp. 3d--, 2020 WL 4347264, at *10 (S.D.N.Y. July 29, 2020) (injunction stayed on other grounds) ([E]ven if immigrants act in part on mistaken belief, the Supreme Court has recognized injury where the plaintiff's harms are based on the 'predictable effect of Government action on the decisions of third parties,' even if such decisions are 'motivated by unfounded fears.'") (quoting *Department of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019)).

9

seekers, because it made their work more difficult and frustrated their core mission of serving the immigrant community, *id.* at *6-7, and because the new DHS rule would predictably cause organizations to divert resources in response to the rule by spending more time helping clients than they would otherwise need to prepare and submit fee waiver applications, helping clients seek and obtain the required financial documents, and preparing fee waiver requests – increasing the costs of providing assistance to each client and requiring a diversion of resources from other work to meet the additional demands imposed the new DHS rule.  *Id.*  The court concluded that these injuries were not speculative even though the new DHS rule did not compel these organizations to take these steps.  *Id.*

It is understandable that Defendants have focused their opposition on standing, because Plaintiffs have a very strong case on the merits.  But the law of standing is not nearly as demanding as the Defendants suggest, and Plaintiffs have demonstrated a substantial likelihood of establishing organizational standing.

## II. THE 2020 RULE DOES NOT SIMPLY CODIFY INTERVENING JUDICIAL DECISIONS AND CANNOT BE JUSTIFIED ON THAT BASIS.

HUD properly acknowledges that its 2013 Rule provided for "nationwide consistency" and "formaliz[ed] the agency's long-held recognition of discriminatory effect liability."  Defs.' Opp. at 1.  But HUD badly misses the mark when it argues that its 2020 Rule merely "incorporate[s] more recent Supreme Court and courts of appeals interpretations of the discriminatory effects standard to better effectuate the purposes of the [FHA]."  *Id.*  HUD asserts on this basis both that (a) Plaintiffs' injuries are not traceable to the 2020 Rule nor redressable by an order vacating the Rule (Defs.' Opp. at 15-17) and (b) the 2020 Rule is neither contrary to law nor arbitrary or capricious (*id.* at 22-25).

10

Plaintiffs have shown that the 2020 Rule is, in fact, flatly inconsistent with decades of disparate impact decisions in the federal courts, including the Supreme Court's decision in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ("*Inclusive Communities*").  Complaint (ECF #1) ¶¶ 2, 64, 69, 72, 76, 80, 106; Pl. Mem. at 1-2, 6, 11-12.  In its effort to salvage the 2020 Rule, HUD points to various court decisions that, according to HUD, provide the basis for certain provisions of the 2020 Rule, including the requirement that any alleged disparate impact be "significant" (Defs.' Opp. at 16, 23); the availability of certain defenses to liability (*id*. at 16); the requirement that the challenged policy be an "artificial, arbitrary and unnecessary barrier" to fair housing (*id*. at 23); and the obligation to establish a "robust causal link" and show "a direct relation between the injury asserted and the injurious conduct alleged" (*id*.).

Neither *Inclusive Communities* nor any of the other decisions HUD relies upon justify the new pleading and proof requirements for disparate impact claims imposed by the 2020 Rule nor any of its novel defenses.  Defendants pluck various phrases from divergent court decisions to try to make their case, but HUD cannot possibly justify the 2020 Rule on the basis that it simply incorporates judicial decisions that have down since HUD promulgated its 2013 Rule or better furthers the core purposes of the FHA.  *See, e.g., Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1300-1301 (2017) (addressing "causation" needed to prove damages in disparate *treatment* case and not addressing disparate impact standards at all); *Luceus v. Rhode Island*, 923 F.3d 255, 257 (1st Cir. 2019) (applying the three-part burden shifting test undone by the 2020 Rule on review of motion for summary judgment); *Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29, 30 (2d Cir. 2016) (order with "no precedential effect" in which plaintiffs failed to state any plausible claim by failing to point to a policy or procedure with discriminatory impact);

*Anderson v. City of Blue Ash*, 798 F.3d 338, 364 (6th Cir. 2015) (not endorsing or addressing defenses inserted into 2020 Rule and relying instead on plain language of challenged ordinance); *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205, 1207 (9th Cir. 2010), as amended (Apr. 30, 2010) (applying three-part burden-shifting framework); *Graoch Assoc. v. Louisville/Jefferson Cnty. Metro Human Rels. Comm.*, 508 F.3d 366, 372-375 (6th Cir. 2007) (applying three-part burden shifting test and noting it provided proper protection to defendants); *Hallmark Devels., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1286 (11th Cir. 2006) (reviewing motion for summary judgment and decision following bench trial).  HUD has no sound basis to claim that its 2020 Rule is compelled by or even properly reflects judicial decisions rendered after HUD promulgated its 2013 Rule to provide for "nationwide consistency" in the prosecution of disparate impact claims under the FHA.

     HUD does not even attempt to show that the most troublesome aspects of the 2020 Rule merely codify what the courts have said.  Notably, HUD makes no effort to show that the new pleading requirement introduced by the 2020 Rule – that a plaintiff must somehow anticipate all possible defenses and allege specific facts in its complaint showing that "the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law" – is even presaged, much less required, by judicial interpretations of the FHA.  24 C.F.R. § 100.500(b)(1).  Nor does HUD make any attempt to show that any judicial decisions require or even authorize HUD to further upend the well-established burden-shifting framework and require the plaintiff to prove that "a less discriminatory policy or practice exists that would serve the defendant's identified interest (or interests) in an equally effective manner *without imposing materially greater costs on, or creating other material burdens for, the defendant*," 24 C.F.R.

12

§ 100.500(c)(3) (emphasis added), in effect allowing property owners or mortgage lenders to escape liability if they can show it might be more expensive for them to engage in non-discriminatory practices.[4]

For all of these reasons, there is no basis for HUD's assertion (Defs.' Opp. at 15-17) that Plaintiffs' injuries are not traceable to its new rule, but instead flow from recent developments in the case law, or that Plaintiffs' injuries would not be redressed if the Court were to stay and ultimately vacate the 2020 Rule.[5] HUD's arguments on the merits of Plaintiffs' "contrary to law" and "arbitrary and capricious" claims also pivot on the agency's baseless assertion that its new 2020 Rule merely reflects evolving judicial interpretations of the FHA (Defs. Opp. at 21-25) that the 2020 Rule cannot be contrary to law or arbitrary and capricious because the 2020 Rule simply reflects careful judicial interpretations of the FHA.[6]

### III.  PLAINTIFFS' CLAIMS ARE RIPE FOR REVIEW.

Defendants attempt to evade review of the 2020 Rule by simultaneously arguing that it provides "clarity" and then acknowledging that they anticipate the actual impact of the new rule will be fleshed out in future litigation.  Def. Opp. at 19.  Because the 2020 Rule can be considered by courts in future litigation, they say, it is not "ripe" for review.

In support of their position that the 2020 Rule is not ripe for review, Defendants rely largely on *Tutein v. Daley*, 116 F. Supp. 2d 205, 207 (D. Mass. 1999).  *Tutein* explains that

---

[4]  HUD makes no attempt to justify on the basis of any judicial decisions the introduction of a new form of motion practice at what HUD calls the "pleading stage" that would call for dismissal of a disparate impact complaint if a defendant makes a "showing that the defendant's policy or practice was reasonably necessary to comply with a third-party requirement."  24 C.F.R. § 100.500(d)(1).

[5]  Because the burdens on Plaintiffs that have precipitated this action arise from HUD's 2020 Rule and not from otherwise binding judicial rulings, rules of other agencies, or self-executing provisions of the FHA, this case is nothing like *Delta Construction v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015)(*per curiam*)*,* or *Texas v. EPA*, 726 F.3d 180, 197–99 (D.C. Cir. 2013).

13

ripeness "requires consideration of 'the fitness of the issue for immediate review and the hardship to the litigant should review be postponed'" (quoting *Riva v. Commonwealth of Massachusetts*, 61 F.3d 1003, 1009 (1st Cir.1995)).  Fitness, in turn, "depends, in part, upon whether certain events will definitely occur as anticipated or whether such events may not occur at all …."  Relevant concerns under the hardship prong include whether "'the challenged action creates a "direct and immediate" dilemma for the parties.'" *Id*. quoting *Riva*, 61 F.3d at 1010 (citation omitted).

In determining that the listing of certain areas as "overfished" was not yet "fit" for review, the Magistrate Judge in *Tutein* explained the listing was only a preliminary step in agency rulemaking, and final regulations were pending.  *Id*. at 207-208.  The 2020 Rule, by contrast, is no mere step in the regulatory process; it is final agency action with a sweeping effect.  If permitted to go into effect, the 2020 Rule will, by HUD's own conception of the rule, be relied on as the agency's "interpretation of the coverage of the Fair Housing Act regarding discrimination related to the sale or rental of dwellings, the provision of services in connection therewith, and the availability of residential real estate-related transactions."  24 C.F.R. § 100.5(b).  Whether HUD's interpretation of disparate impact under the FHA is correct will have concreate and immediate impacts on the Plaintiffs and the clients they serve.  If nothing else, it will create a "direct and immediate dilemma" for parties who must wade through the morass of the new rule to determine how it alters well-established practice under the FHA.  The many questions Plaintiffs raise about the 2020 Rule show that it is anything but clear; they do not show that this case is not ripe for adjudication.

### IV. PLAINTIFFS HAVE STANDING TO CHALLENGE HUD'S FAILURE TO ADHERE TO NOTICE AND COMMENT REQUIREMENTS.

Plaintiffs are not required, as Defendants baldly assert (Defs.' Opp. at 25), to allege a specific injury caused by the inclusion of the "outcome prediction" defense in the 2020 Rule without notice and comment. Here, the injury for which Plaintiffs seek redress is not the lack of notice and comment itself, but rather the unlawful promulgation of the 2020 Rule. By virtue of that injury, Plaintiffs have standing to challenge the various ways in which the 2020 Rule was unlawfully promulgated – HUD's failure to follow proper notice and comment procedures for the "outcome prediction" defense does not constitute a separate claim for which Plaintiffs must independently demonstrate standing. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 767 n.8 (9th Cir. 2018) (concluding injuries imposed by DHS Rule confer standing to challenge procedure and absence of notice and comment by which the DHS Rule was promulgated).[7]

### Conclusion

For these reasons and the reasons offered in their opening brief, the Court should grant Plaintiffs' motion, postpone the effective date of HUD's 2020 Rule and issue a nationwide preliminary injunction barring HUD from implementing the 2020 Rule pending the Court's review.

---

[7] Although in seeking preliminary relief under § 705 Plaintiffs do not rely on their fourth claim – that HUD exceeded its statutory authority in purporting to prescribe new pleading rules and motion practice in both federal and state courts – Plaintiffs did not waive that claim, as HUD argues, by failing to raise it in the comments they submitted during HUD's rulemaking (Defs.' Opp. at 27). Plaintiffs are entitled to challenge the 2020 Rule on a basis raised in others' comments, not just their own. The cases Defendants rely on involve matters not raised before the agency by any party during the rulemaking. *See, e.g. Lake Carriers' Ass'n v. E.P.A.*, 652 F.3d 1, 7 (D.C. Cir. 2011) (Noting that although many commenters had submitted comments on an aspect of the challenged rule, none raised the argument plaintiffs raised for the first time on judicial appeal) . Here, HUD acknowledged that the scope of its authority to address pleading standards was an issue raised by several commenters on the Proposed Rule. *See* 85 Fed. Reg. 63Fed. Reg. 60288, 60307-60308, 60315-60316.

Case 3:20-cv-11765-MGM Document 25-1 Filed 10/15/20 Page 17 of 17

By their attorneys,

/s/ Mina S. Makarious
Lauren Sampson (BBO # 704319)
Oren Sellstrom (BBO # 569045)
LAWYERS FOR CIVIL RIGHTS
61 Batterymarch Street, 5th Floor
Boston, Massachusetts 02210
(617) 482-1145

Scott P. Lewis (BBO # 298740)
Mina S. Makarious (BBO # 675779)
Annie E. Lee (BBO # 705568)
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, Massachusetts 02109
(617) 621-6525

October 15, 2020

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing, and to all other parties in accordance with the Federal Rules of Civil Procedure and Local Rules.

                                          /s/ Mina S. Makarious