UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS FAIR HOUSING CENTER, and HOUSING WORKS, INC. | * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| | * | Civil Action No. 20-11765-MGM |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and BEN CARSON, Department of Housing and Urban Development | * * * * * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
UNDER 5 U.S.C. § 705 TO POSTPONE THE EFFECTIVE DATE
OF HUD'S UNLAWFUL NEW RULE
(Dkt. No. 11)

October 25, 2020

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Presently before the court is a motion, filed by Plaintiffs Massachusetts Fair Housing Center ("MFHC") and Housing Works, Inc., seeking a preliminary injunction and stay of the effective date of a new Department of Housing and Urban Development ("HUD") rule, *HUD's Implementation of the Fair Housing Act's Disparate Treatment Standard*, 85 Fed. Reg. 60288 (Sept. 24, 2020) ("2020 Rule"), under the Administrative Procedure Act ("APA"), 5 U.S.C. § 705. For the following reasons, the court will grant Plaintiffs' motion.

II. BACKGROUND

HUD has long recognized so-called "disparate impact" liability under the Fair Housing Act. Unlike disparate treatment liability, which requires discriminatory intent, disparate impact liability is based on the discriminatory impact of a policy or practice and the absence of an adequate justification. *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015) (recognizing disparate impact liability under the Fair Housing Act). In 2013, HUD issued a rule setting forth its interpretation of the standards for such disparate impact claims under the Fair Housing Act: *Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11560 (Feb. 15, 2013) ("2013 Rule"). The 2013 Rule, codified at 24 C.F.R. § 100.500, provides a relatively straight-forward burden-shifting framework. Specifically, it states:

> Liability may be established under the Fair Housing Act based on a practice's discriminatory effect, as defined in paragraph (a) of this section, even if the practice was not motivated by a discriminatory intent. The practice may still be lawful if supported by a legally sufficient justification, as defined in paragraph (b) of this section. The burdens of proof for establishing a violation under this subpart are set forth in paragraph (c) of this section.
>
> (a) Discriminatory effect. A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin.
>
> (b) Legally sufficient justification.
>
>     (1) A legally sufficient justification exists where the challenged practice:
>
>     (i) Is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent, with respect to claims brought under 42 U.S.C. 3612, or defendant, with respect to claims brought under 42 U.S.C. 3613 or 3614; and
>
>     (ii) Those interests could not be served by another practice that has a less discriminatory effect.
>
>     (2) A legally sufficient justification must be supported by evidence and may not be hypothetical or speculative. The burdens of proof for establishing each of the two elements of a legally sufficient justification are set forth in paragraphs (c)(2) and (c)(3) of this section.

>    (c) Burdens of proof in discriminatory effects cases.
>
>>    (1) The charging party, with respect to a claim brought under 42 U.S.C. 3612, or the plaintiff, with respect to a claim brought under 42 U.S.C. 3613 or 3614, has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect.
>
>>    (2) Once the charging party or plaintiff satisfies the burden of proof set forth in paragraph (c)(1) of this section, the respondent or defendant has the burden of proving that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant.
>
>>    (3) If the respondent or defendant satisfies the burden of proof set forth in paragraph (c)(2) of this section, the charging party or plaintiff may still prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect.
>
>    (d) Relationship to discriminatory intent. A demonstration that a practice is supported by a legally sufficient justification, as defined in paragraph (b) of this section, may not be used as a defense against a claim of intentional discrimination.

24 C.F.R. § 100.500.

In contrast, the 2020 Rule, set to go into effect on October 26, 2020, significantly alters the 2013 Rule's standards. It provides:

>    (a) General. Liability may be established under the Fair Housing Act based on a specific policy's or practice's discriminatory effect on members of a protected class under the Fair Housing Act even if the specific practice was not motivated by a discriminatory intent.
>
>    (b) Pleading stage. At the pleading stage, to state a discriminatory effects claim based on an allegation that a specific, identifiable policy or practice has a discriminatory effect, a plaintiff or charging party (hereinafter, "plaintiff") must sufficiently plead facts to support each of the following elements:
>
>>    (1) That the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;
>
>>    (2) That the challenged policy or practice has a disproportionately adverse effect on members of a protected class;

(3) That there is a robust causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the direct cause of the discriminatory effect;

(4) That the alleged disparity caused by the policy or practice is significant; and

(5) That there is a direct relation between the injury asserted and the injurious conduct alleged.

(c) Burdens of proof in discriminatory effect cases. The burdens of proof to establish that a policy or practice has a discriminatory effect, are as follows:

(1) A plaintiff must prove by the preponderance of the evidence each of the elements in paragraphs (b)(2) through (5) of this section.

(2) A defendant or responding party (hereinafter, "defendant") may rebut a plaintiff's allegation under (b)(1) of this section that the challenged policy or practice is arbitrary, artificial, and unnecessary by producing evidence showing that the challenged policy or practice advances a valid interest (or interests) and is therefore not arbitrary, artificial, and unnecessary.

(3) If a defendant rebuts a plaintiff's assertion under paragraph (c)(1) of this section, the plaintiff must prove by the preponderance of the evidence either that the interest (or interests) advanced by the defendant are not valid or that a less discriminatory policy or practice exists that would serve the defendant's identified interest (or interests) in an equally effective manner without imposing materially greater costs on, or creating other material burdens for, the defendant.

(d) Defenses. The following defenses are available to a defendant in a discriminatory effect case.

(1) Pleading stage. The defendant may establish that a plaintiff has failed to sufficiently plead facts to support an element of a prima facie case under paragraph (b) of this section, including by showing that the defendant's policy or practice was reasonably necessary to comply with a third-party requirement, such as a:

(i) Federal, state, or local law;

(ii) Binding or controlling court, arbitral, administrative order or opinion; or

(iii) Binding or controlling regulatory, administrative or government guidance or requirement.

(2) After the pleading stage. The defendant may establish that the plaintiff has failed to meet the burden of proof to establish a discriminatory effects claim under paragraph (c) of this section, by demonstrating any of the following:

> (i) The policy or practice is intended to predict an occurrence of an outcome, the prediction represents a valid interest, and the outcome predicted by the policy or practice does not or would not have a disparate impact on protected classes compared to similarly situated individuals not part of the protected class, with respect to the allegations under paragraph (b). This is not an adequate defense, however, if the plaintiff demonstrates that an alternative, less discriminatory policy or practice would result in the same outcome of the policy or practice, without imposing materially greater costs on, or creating other material burdens for the defendant.
>
> (ii) The plaintiff has failed to establish that a policy or practice has a discriminatory effect under paragraph (c) of this section.
>
> (iii) The defendant's policy or practice is reasonably necessary to comply with a third party requirement, such as a:
>
>> (A) Federal, state, or local law;
>>
>> (B) Binding or controlling court, arbitral, administrative order or opinion; or
>>
>> (C) Binding or controlling regulatory, administrative, or government guidance or requirement.
>
> (e) Business of insurance laws. Nothing in this section is intended to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance.
>
> (f) Remedies in discriminatory effect cases. In cases where liability is based solely on a discriminatory effect theory, remedies should be concentrated on eliminating or reforming the discriminatory practice so as to eliminate disparities between persons in a particular protected class and other persons. In administrative proceedings under 42 U.S.C. 3612(g) based solely on discriminatory effect theory, HUD will seek only equitable remedies, provided that where pecuniary damage is proved, HUD will seek compensatory damages or restitution; and provided further that HUD may pursue civil money penalties in discriminatory effect cases only where the defendant has previously been adjudged, within the last five years, to have committed unlawful housing discrimination under the Fair Housing Act, other than under this section.
>
> (g) Severability. The framework of the burdens and defenses provisions are considered to be severable. If any provision is stayed or determined to be invalid or their applicability to any person or circumstances invalid, the remaining provisions shall be construed as to be given the maximum effect permitted by law.

24 C.F.R. § 100.500 (effective October 26, 2020).

There can be doubt that the 2020 Rule weakens, for housing discrimination victims and fair housing organizations, disparate impact liability under the Fair Housing Act. It does so by introducing new, onerous pleading requirements on plaintiffs,[1] and significantly altering the burden-shifting framework by easing the burden on defendants of justifying a policy with discriminatory effect while at the same time rendering it more difficult for plaintiffs to rebut that justification.[2] In addition, the 2020 Rule arms defendants with broad new defenses which appear to make it easier for offending defendants to dodge liability and more difficult for plaintiffs to succeed. In short, these changes constitute a massive overhaul of HUD's disparate impact standards, to the benefit of putative defendants and to the detriment of putative plaintiffs (and, by extension, fair housing organizations, such as MFHC).

Plaintiffs are fair housing organizations that provide an array of services to victims of housing and lending discrimination, including legal representation, education, and advocacy. (*See* Dkt. No. 12-1; Dkt. No. 12-2.) They filed this action on September 28, 2020, seeking to vacate the 2020 Rule under the APA. (Dkt. No. 1.) On October 6, 2020, Plaintiffs filed their motion for preliminary injunction and stay under 5 U.S.C. § 705. (Dkt. No. 11.) Defendants opposed Plaintiffs' motion on October 14, 2020, arguing a lack of standing and ripeness as well as failure to satisfy the

---

[1] *See* 2020 Rule, 24 C.F.R. § 100.500(b) (requiring at "the pleadings stage," among other things, that plaintiffs "sufficiently plead facts to support" . . . "[t]hat the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law.")

[2] For example, the 2013 Rule requires defendants, after plaintiffs meet their initial burden of showing that the practice "caused or predictably will cause a discriminatory effect," to prove "that the challenged practice is necessary to achieve one or more *substantial, legitimate, nondiscriminatory* interests," before the burden shifts back to plaintiffs. 2013 Rule, 24 C.F.R. § 100.500(c)(2) (emphasis added). The 2020 Rule, however, permits defendants to "rebut a plaintiff's allegation under (b)(1) . . . that the challenged policy or practice is arbitrary, artificial, and unnecessary by producing evidence showing that the challenged policy or practice" merely "*advances a valid interest*." 2020 Rule, 24 C.F.R. § 100.500(c)(2) (emphasis added). In addition, the 2013 Rule, at the third step of the burden-shifting framework, permits a plaintiff to prevail by "proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect," 2013 Rule, 24 C.F.R. § 100.500(c)(2), whereas the 2020 Rule requires the plaintiff to prove "that a less discriminatory policy or practice exists that would serve the defendant's identified interest (or interests) in an equally effective manner *without imposing materially greater costs* on, or creating *other material burdens* for, the defendant," 2020 Rule 24 C.F.R. § 100.500(c)(2) (emphasis added).

requirements for obtaining a preliminary injunction. Plaintiffs thereafter filed a reply brief, and the court held a hearing on October 16, 2020. (Dkt. Nos. 25, 27, 28.)

### III. SUBJECT MATTER JURISDICTION

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). "Two of the . . . manifestations [of this limitation] are the justiciability doctrines of standing and ripeness, which are interrelated; each is rooted in Article III." *Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017).

A.  <u>Standing</u>

"[T]he standing inquiry [is] focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). To show standing, "[a] plaintiff must demonstrate (1) an injury in fact which is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) that the injury is 'fairly traceable to the challenged action,' and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" *Massachusetts v. United States Dep't of Health & Human Servs.*, 923 F.3d 209, 221–22 (1st Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Moreover, "[i]t is well-established that an organization can sue to obtain compensation for injuries it sustains," so long as these same requirements are met. *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 324 (D. Mass. 2013); *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379-80 (1982). Accordingly, organizational standing exists when the organization suffers (or likely will suffer) "an injury to its organizational activities.*" Equal Means Equal v. Ferriero*, 2020 WL 4548248, at *10 (D. Mass. Aug. 6, 2020).

The court concludes, at this preliminary stage of the litigation, that Plaintiff MFHC has demonstrated standing. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007) (only one plaintiff need establish standing). Contrary to the government's significantly overstated argument, MFHC has

shown more than "a mere interest in a problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Rather, MFHC "has set forth predictions of injury, supported by evidence" which "would be caused by the federal regulations and would be redressable by an injunction." *Massachusetts*, 923 F.3d. at 227; *see also E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 843–44 (9th Cir. 2020). Specifically, MFHC attests that if the 2020 Rule goes into effect, it will be forced to expend additional resources in preparing to bring disparate impact claims due to the heightened pleading and proof requirements, abandon potential disparate impact claims which are otherwise viable under the 2013 Rule, and modify its education and training programs. (*See* Dkt. No. 12-1 ¶¶ 24-28, 44-49.) As the First Circuit has explained, plaintiffs "need not wait for an actual injury to occur before filing suit" nor "demonstrate that it is literally certain that the harms they identify will come about." *Massachusetts*, 923 F.3d. at 222, 224; *see also Adams v. Watson*, 10 F.3d 915, 921 (1st Cir. 1993) ("[I]t could hardly be thought that administrative action likely to cause harm cannot be challenged until it is too late." (internal quotation marks omitted)). By demonstrating a "substantial probability" that concrete and particularized harm will occur to MFHC's core mission of combatting housing discrimination, MFHC has satisfied the standing requirement. *Maine People's All. And Nat. Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 284 (1st Cir. 2006).

B.     Ripeness

The court also concludes that this APA challenge is ripe. The "ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy*, 845 F.3d at 500 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) ("The basic rationale of the ripeness inquiry is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." (internal quotation marks omitted)). Moreover, as to APA challenges, "[w]here, as here, a petition

involves purely legal claims in the context of a facial challenge to a final rule, a petition is 'presumptively reviewable,'" *i.e.*, ripe. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) (quoting *Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1119 (D.C.Cir.2005)). Plaintiffs have brought such a facial challenge to a final rule based on purely legal claims. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019) ("A facial challenge is really just a claim that the law or policy at issue is [unlawful] in all its applications."); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1281–84 (D.C. Cir. 2005) ("[C]laims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues." (internal quotation marks omitted) Although Plaintiffs' challenge to the 2020 Rule is somewhat abstract, that is in the nature of disparate impact theory. The government has made well-reasoned points on this issue but, at this preliminary stage, the court finds Plaintiffs' challenge is sufficiently "fit" for judicial resolution and they face immediate hardship if the court were to withhold review. *See Roman Catholic Bishop of Springfield*, 724 F.3d at 89-93.

IV. ANALYSIS

Plaintiffs seek a preliminary injunction barring implementation of HUD's 2020 Disparate Impact Rule and a stay of the effective date of this rule under the Administrative Procedure Act ("APA"), 5 U.S.C. § 705.[3] The parties agree that the same standard governs both forms of relief.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* (quoting *Amoco Production Co. v. Village of Gambell, Ak.*, 480 U.S. 531, 542

---

[3] In relevant part, 5 U.S.C. § 705 provides: "On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

(1987)). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties . . . but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal citation omitted). In order to obtain such preliminary injunctive relief, a plaintiff must demonstrate "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (internal quotation marks omitted). The First Circuit has explained that likelihood of success on the merits is "the most important of the four preliminary injunction factors." *Doe v. Trustees of Bos. Coll.*, 942 F.3d 527, 533 (1st Cir. 2019).

A.   <u>Likelihood of Success on the Merits</u>

In support of their preliminary injunction motion, Plaintiffs rely on three arguments: (1) the 2020 Rule is "contrary to law"; (2) the changes to the 2013 Rule are "arbitrary and capricious"; and (3) the 2020 Rule's inclusion of the "outcome prediction defense," to be codified at 24 C.F.R. § 100.500(d)(2)(i), violates the APA's "notice and comment" requirements. The court only addresses Plaintiffs' second argument, which it finds is likely meritorious.

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). "It requires agencies to engage in 'reasoned decisionmaking,' . . . and directs that agency actions be 'set aside' if they are 'arbitrary' or 'capricious,' 5 U.S.C. § 706(2)(A)." *Id.* (internal citation omitted). This standard of review is "narrow" and "a court is not to substitute its judgment for that of the agency." *Id.* (internal quotation marks omitted); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) ("Under what we have called this 'narrow' standard of review, we insist that an agency 'examine the relevant data and articulate a satisfactory explanation for its action.'" (quoting

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983))).

As explained above, the 2020 Rule constitutes a significant overhaul to HUD's interpretation of disparate impact standards. HUD's explanation for these changes generally boil down to two justifications: (1) they bring these standards into alignment with the Supreme Court's decision in *Inclusive Communities*, and (2) they provide greater clarity to the public. *See generally* 85 Fed Reg. 60288-01.

As to the first justification, the parties vigorously dispute whether the changes "merely incorporate" the standards set forth by the Supreme Court in *Inclusive Communities* and other precedent, as Defendants argue. (Dkt. No. 24 at 16; *see also id.* at 22-24.) The court believes both sides have exaggerated their respective arguments on this point. For example, Plaintiffs argue there is no judicial support for the 2020 Rule's requirement, to be codified in 24 C.F.R. § 100.500(b)(1), that a plaintiff must plead, at the outset, facts showing "[t]hat the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law." But, as Defendants point out, the "arbitrary, artificial, and unnecessary" language comes directly from *Inclusive Communities*, 576 U.S. at 540, 543, 544. Moreover, Plaintiffs completely ignore, in their briefing, the Eighth Circuit's decision in *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1112 (8th Cir. 2017), which interpreted *Inclusive Communities* to require that plaintiffs allege in the complaint that the challenged policy is "arbitrary and unnecessary."

On the other hand, the additional language in 24 C.F.R. § 100.500(b)(1)—"such as a practical business, profit, policy consideration"—is not, as far as the court is aware, found in any judicial decision. The same is true as to other important provisions in the 2020 Rule, including the new "outcome prediction" defense; the requirement at the third step of the burden-shifting

framework that the plaintiff prove "a less discriminatory policy or practice exists that would serve the defendant's identified interest (or interests) in an *equally effective manner without imposing materially greater costs* on, or creating *other material burdens* for, the defendant"; and the conflating of a plaintiff's prima facie burden and pleading burden. 2020 Rule, 24 C.F.R. § 100.500(c)(3) (emphasis added), (d)(1), and (d)(2)(iii). These significant alterations, which run the risk of effectively neutering disparate impact liability under the Fair Housing Act, appear inadequately justified.

Similarly, HUD's second explanation for the changes—to provide greater clarity—appear arbitrary and capricious. As Plaintiffs argue, the 2020 Rule, with its new and undefined terminology, altered burden-shifting framework, and perplexing defenses accomplish the opposite of clarity—"it raises far more questions than it answers." (Dkt. No. 12 at 12.)

Accordingly, at this very preliminary stage, the court finds Plaintiff have shown a substantial likelihood of success on the merits as to their claim that the 2020 Rule is arbitrary and capricious under the APA.

B.     Irreparable Harm

As explained, the 2020 Rule's massive changes pose a real and substantial threat of imminent harm to MFHC's mission by raising the burdens, costs, and effectiveness of disparate impact liability. Moreover, because the APA does not provide for monetary damages, these harms are not recoverable if the 2020 Rule is allowed to go into effect but later vacated. *See E. Bay Sanctuary Covenant*, 964 F.3d at 854; *D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 34–38 (D.D.C. 2020); *City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, 408 F. Supp. 3d 1057, 1121 (N.D. Cal. 2019); *New Hampshire Hosp. Ass'n v. Burwell*, 2016 WL 1048023, at *16–18 (D.N.H. Mar. 11, 2016). The court therefore finds Plaintiffs have demonstrated a significant risk of irreparable harm if the injunction is withheld.

C. <u>Balance of Harms and Public Interest</u>

The final two preliminary injunction factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants have not identified any particularized risks of harm the government or the public would face should the injunction issue, especially given the existence of the 2013 Rule, which has been and can continue to be workable, for both sides, in the realm of disparate impact litigation. In addition, the court finds it is in the public interest to require agencies to adequately justify significant changes to its regulations, particularly changes that weaken anti-discrimination provisions. As the Supreme Court explained in *Inclusive Communities*, disparate impact liability "is consistent with the FHA's central purpose" of "eradicate[ing] discriminatory practices within a sector of our Nation's economy." *Inclusive Communities*, 576 U.S. at 539 (2015). Moreover, "disparate-impact liability under the FHA also plays a role in uncovering discriminatory intent: It permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." *Id.* at 540. The court finds the balance of harms and public interest supports a preliminary injunction pending a complete review of Plaintiffs' APA challenge.

V. Conclusion

For these reasons, the court ALLOWS Plaintiffs' Motion for a Preliminary Injunction Under 5 U.S.C. § 705 to Postpone the Effective Date of HUD's Unlawful New Rule (Dkt. No. 11).

> (1) The court therefore, pursuant to 5 U.S.C. § 705, **STAYS** the implementation of HUD's Rule entitled *HUD's Implementation of the Fair Housing Act's Disparate Treatment Standard*, 85 Fed. Reg. 60288 (Sept. 24, 2020) (to be codified at 24 C.F.R. § 100.500), in its entirety, pending entry of a final judgment on Plaintiffs' APA claims. The effective date of the Final Rule is hereby **POSTPONED** pending conclusion of these review proceedings.
>
> (2) In addition, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the court **PRELIMINARILY ENJOINS** Defendants and their officers, agents, servants, employees, and attorneys, and any person in active concert or participation with them, from implementing or enforcing the Rule entitled *HUD's Implementation of the Fair Housing Act's Disparate Treatment Standard*, 85 Fed. Reg. 60288 (Sept. 24, 2020), in any manner or in any

respect, and shall preserve the status quo pursuant to the regulations in effect as of the date of this Order, until further order of the court.

(3) No bond shall be required pursuant to Federal Rule of Civil Procedure 65(c).

It is So Ordered.

                                                                           /s/ Mark G. Mastroianni  
                                                                          MARK G. MASTROIANNI  
                                                                          United States District Judge